[File No. 6681.]

NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, Appellant, v. STATE OF NORTH DAKOTA et al., Respondents.

(299 NW 696)

Opinion filed July 10, 1941.

L. B. da Ponte, M. L. Countryman, Jr., and Conmy & Conmy, for appellant.

*Alvin C. Strutz,* Attorney General, and *P. O. Sathre, T. A. Thompson* and *C. F. Kelsch,* Assistant Attorneys General, for respondents.

CHRISTIANSON, J. The plaintiff, Northern Pacific Railway Company, brought this action pursuant to chapter 226, Laws 1939, against the state of North Dakota and the several counties of the state into which the railroad of the plaintiff extends. The object of the action is to cancel, and enjoin the collection of, a portion of the taxes levied and assessed against the railroad properties of the plaintiff for the year 1939, and to fix and determine the amount of taxes the plaintiff must pay. In its complaint the plaintiff alleges that by wrongful and unlawful methods and proceedings taken and had by the State Board of Equalization in 1939, plaintiff's property was intentionally, arbitrarily, and wrongfully, grossly over-assessed; that the proceedings of the State Board of Equalization "in 1939 has resulted in an intentional, systematic, unlawful, and discriminatory over-valuation and taxation of plaintiff's property, grossly in excess of its market value and taxable value under the laws of North Dakota, and in the taxation of property situated out of the state and of property not taxable under the laws of North Dakota, and has imposed on plaintiff illegal and discriminatory taxation in violation of §§ 11, 22 and 176, as amended by Articles 20 and 29, and § 179, as amended by Articles 4, 20 and 44, of the Constitution of North Dakota and the laws of North Dakota applicable to the taxation of railroad property, and of the equal protection and due

process clauses of the Fourteenth Amendment and Article 1, § 8, of the Constitution of the United States."

The defendants, in their answer, deny all the allegations in the complaint pleading over-assessment or over-valuation of plaintiff's property, and allege that the valuation placed upon the plaintiff's property by the State Board of Equalization for taxation purposes for the year 1939, to wit, $41,263,044 "is a just, fair, equitable, and reasonable valuation for taxation and other purposes; that in arriving at said valuation of plaintiff's railroad property in North Dakota, used in the transportation of persons and property, the State Board of Equalization took into consideration formulas, methods and practices generally employed by taxing bodies over a long period of years in assessing railroad property for taxation purposes, and also considered other factors pertinent in making said assessment, and that said valuation has been duly certified to the several county auditors in the proportion applicable to their respective counties as provided by the Constitution and statutes of North Dakota."

The case came on for trial upon the issues thus framed. The plaintiff introduced evidence, consisting of the testimony of witnesses and documentary evidence. The defendants introduced no evidence. The trial court found "that the proofs and evidence adduced by the plaintiff herein are insufficient to establish the allegations in its complaint, and, that the plaintiff has failed to establish a cause of action against the defendants herein," and ordered judgment for a dismissal of the action. Judgment was entered accordingly, and the plaintiff has appealed to this Court demanding a trial de novo. The Constitution of this state (§ 179, as amended) provides: "All taxable property except as hereinafter in this section provided, shall be assessed in the county, city, township, village or district in which it is situated, in the manner prescribed by law. The property, including franchises of all railroads operated in this state, . . . shall be assessed by the state board of equalization in a manner prescribed by such state board or commission as may be provided by law."

The State Board of Equalization consists of the Governor, State Treasurer, State Auditor, Commissioner of Agriculture and Labor, and the State Tax Commissioner. 1925 Supplement, § 2141.

The laws of the state provide that the State Board of Equalization, at its annual meeting in August of each year, shall assess at its actual value all railroads within the state; and that "in estimating the value" of railroad branches and sidetracks the Board of Equalization shall be governed by the same rules that apply to county and township assessors in valuing other property in the state. Comp. Laws 1913, § 2242. The average values per mile of main and branch lines respectively, constitute the basis for assignment of value to counties. Comp Laws 1913, § 2243. On like mileage basis the value assigned to each county is distributed to cities, towns, townships, and districts through which the railroad extends. Comp. Laws 1913, § 2244. "All property, real, personal and mixed, subject to a general property tax" is to be "valued and assessed at fifty (50) per cent of the full and true value thereof, except farm buildings and improvements," which are exempted from taxation. Initiated Measure, approved June 29, 1932, Laws 1933, p. 493. In determining the value of railroad property under § 179 of the Constitution, the State Board of Equalization exercises powers judicial in their nature. Farrington v. New England Invest. Co. 1 ND 102, 45 NW 191; 61 CJ pp. 583, 756; Chicago, B. & Q. R. Co. v. Babcock, 204 US 585, 598, 51 L ed 636, 640, 27 S Ct 326.

The Constitution vests the State Board of Equalization with broad powers in the assessment of such property. It prescribes no "formula, rule or method," and for guidance to right judgment in determining the value of such property, the members of the Board are "free to consider all pertinent facts, estimates and forecasts and to give them such weight as reasonably they might be deemed to have" (Great Northern R. Co. v. Weeks, 297 US 135, 139, 80 L ed 532, 536, 56 S Ct 426), and may also draw upon their own knowledge. Chicago, B. & Q. R. Co. v. Babcock, supra.

"The board was created for the purpose of using its judgment and its knowledge. State R. Tax Cases, 92 US 575, 23 L ed 663; State ex rel. Bee Bldg. Co. v. Savage, 65 Neb 714, 768, 769, 91 NW 716; Re Cruger, 84 NY 619, 621; San Jose Gas Co. v. January, 57 Cal 614, 616. Within its jurisdiction, except . . . in the case of fraud or a clearly shown adoption of wrong principles, it is the ultimate guardian of certain rights. The state has confided those rights to its

protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law." Chicago, B. & Q. R. Co. v. Babcock, 204 US at p. 598, 51 L ed at p. 640, 27 S Ct 326.

The Constitution makes no provision for an appeal from, or review of, the determinations made by the State Board of Equalization in making assessments under § 179 of the Constitution. Hence, all honest determinations of the Board, within the scope of its authority, are final. 61 CJ p. 758; 11 Enc US Sup Ct Rep p. 517. Courts may inquire into the jurisdiction of the Board, and set aside its determinations if made without, or in excess of, the powers conferred upon it by law. 61 CJ 856. Courts may also inquire whether a determination is fraudulent, and set it aside for fraud; but a determination of the Board is binding upon the courts unless it is shown clearly that the determination was made fraudulently, or in such wrongful, arbitrary, or capricious manner as to constitute in effect fraud in law or an act in excess of jurisdiction. Chicago, B. & Q. R. Co. v. Babcock, supra; Maish v. Arizona, 164 US 599, 41 L ed 567, 17 S Ct 193; Pittsburg, C. C. & St. L. R. Co. v. Backus, 154 US 421, 38 L ed 1031, 14 S Ct 1114; Great Northern R. Co. v. Weeks, 297 US 135, 80 L ed 532, 56 S Ct 426, supra; Nashville, C. & St. L. R. Co. v. Browning, 310 US 362, 84 L ed 1254, 60 S Ct 968; 11 Enc US Sup Ct Rep pp. 517, 518, 528; 61 CJ pp. 758, 853, 855, 856.

The rule supported by the overwhelming weight of authority is that in absence of specific authority courts have no power to review, or change, the valuation of property fixed by assessing officers, and that a court of general jurisdiction has no inherent power to conduct an inquiry where relief is sought against taxes solely on the ground that the assessing officers were in error in their valuation of the property assessed. Maish v. Arizona, 164 US 599, 41 L ed 567, 17 S Ct 193; Great Northern R. Co. v. Weeks, 297 US 135, 80 L ed 532, 56 S Ct 426, and Nashville, C. & St. L. R. Co. v. Browning, 310 US 362, 84 L ed 1254, 60 S Ct 968, supra; 11 Enc US Sup Ct Rep pp. 517, 518; 61 CJ 855. These principles apply with full force to assessments made by the State Board of Equalization under § 179 of the Constitution. In Great Northern R. Co. v. Weeks, 297 US 135, 80 L ed 532, 56 S

Ct 426, supra, the Court said: "Over-valuation is not itself sufficient to warrant injunction against any part of the taxes based on the challenged assessment; mere error of judgment is not enough; there must be something that in legal effect is the equivalent of intention or fraudulent purpose to overvalue the property and so to set at naught fundamental principles that safeguard the taxpayer's rights and property."

In 1939, the Legislative Assembly enacted certain legislation providing for remedies to taxpayers feeling aggrieved by taxation. In its enactments, the Legislature drew a clear distinction between properties assessed by local assessors and properties assessed by the State Board of Equalization. By chapter 225, Laws 1939, the Legislature provided for review by the courts of the valuations of property "assessed by local assessors," and made over-valuation alone a ground for relief without regard to whether the assessment was or was not discriminatory. Werner v. Riebe, 70 ND 533, 296 NW 422. By chapter 226, Laws 1939, the Legislature provided that: "Any person, firm, or corporation, whose property is now being, or has been valued and assessed for taxation purposes by the State Board of Equalization under the Constitution or the statutes of this state, or against whom any tax be levied or assessed by said board, feeling aggrieved for any reason with the assessment or levy so made may bring an action for relief, at law or in equity, against the state and any or all of its subdivisions therein interested, in the district court of Burleigh county, North Dakota, and without the necessity of bringing a separate action against each of said subdivisions; provided any such action is brought on or before the date on which the taxes to be collected under the levy and assessment involved become due; and provided, further, that no action shall be brought against the state under this act for refund of taxes already paid unless said taxes, sought to be refunded, were paid under protest in writing before delinquency thereof." (Section 1.)

The district court of Burleigh county is given jurisdiction over any and all actions brought under the provisions of said chapter, "whether such actions are brought against the state only or against the state and one or more of its subdivisions." The decisions of the district court in such actions are made subject to appeal to the supreme court in the same manner as decisions in other civil actions. Id. § 2.

Chapter 226, Laws 1939, was doubtless enacted in consequence of the Act of Congress of August 21, 1937 (50 Stat. at L. 738, chap. 726, 28 USCA § 41 (1)) which provided that no district court of the United States "shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any state where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such state." Said chapter 226 was intended to provide remedy in the courts of this state which, under the Act of Congress, would operate to deprive a Federal district court of jurisdiction to entertain suits to enjoin, suspend or restrain the assessment, levy or collection of any tax imposed by or pursuant to the laws of the state. Said chapter was not intended, and does not operate, to enlarge the scope of judicial review of the decisions of the State Board of Equalization. The determinations of the State Board of Equalization as to the value of properties assessed by it have the same binding effect that they had, and are subject to review by the courts only to the extent and in the circumstances they were, before the statute was enacted.

From the record of the proceedings had upon the trial, and the arguments on appeal, it appears that it is the claim of the plaintiff that the alleged over-valuation and over-assessment of plaintiff's property resulted from the fact (a) that the State Board of Equalization in applying the stock and bond method in valuing plaintiff's property failed to make proper deductions for nonoperating property, used a wholly improper method in arriving at the value of the nonoperating property, and neglected to deduct cash on hand in banks; and (b) that the Board in determining system value by the capitalization of earnings, "included as operating earnings, rent received from other railroads for the use by them of plaintiff's lines and facilities."

The plaintiff called its statistician and its tax commissioner as witnesses as to the valuation of its system and the valuation apportionable to North Dakota. The principal testimony was given by the statistician. The testimony of these witnesses as to valuation was predicated solely upon the stock and bond and the capitalized income methods and a five year average of the composite of the stock and bond and capitalized income values. It is the contention of the plaintiff that the latter

is the method that has been used during past years and was used by the State Board of Equalization in the valuation of plaintiff's property in 1939 and that this is the proper method of establishing such values.

In plaintiff's brief on this appeal, it is said: "The undisputed proof is that the state and the plaintiff in its figures used the same method in arriving at system value, a composite of a five year value based upon the stock and bond method and a five year value based upon capitalization of earnings, and there is no dispute as to the portion of the system value that should be allocated to North Dakota. So the only real issue was and is as to what are proper nonoperating deductions, and what is the value of these deductions, and this is true whether or not we have shown by what system or methods the State Board arrived at its valuation."

The record does not sustain plaintiff's assertion that the state used the same method as that adopted by plaintiff and its witnesses in arriving at "system value," namely, "a composite of a five year value based upon the stock and bond method and a five year value based upon the capitalization of earnings." It is true the tax commissioner produced a document relating to valuation of plaintiff's property according to the methods referred to by plaintiff, but there is nothing to show that this document constituted a determinaion by the State Board of Equalization as to values or that it constituted anything other than a statement, or computation made by someone, which the Board had before it, and which the Board may or may not have considered authentic in making its valuation. So far as the record shows, such document is at most an item or statement of facts that the Board of Equalization considered in seeking to ascertain and determine the value of plaintiff's property. As was well said by the trial court in the memorandum decision which he filed in this case: "Although plaintiff complains that the State Board of Equalization in 1939 and for many years prior has valued plaintiff's property by use of the so-called stock-and-bond method and capitalized-income method, giving equal consideration to each, and by these methods only, and that in 1939 said board used a wrongful and unlawful method in determining values, these allegations are not supported by the evidence. Just what method or methods the State Board

of Equalization used does not appear. The members of the board did not take the witness stand. No explanation has been made by any member of said board as to how the board arrived at the assessment which was finally agreed upon. As heretofore pointed out, the law does not require the board to follow any particular method, nor does the law require the board to file as a public document any statement of the facts found as a basis for the board's judgment in arriving at assessed value." This statement is fully supported by the record.

As has been pointed out, the State Board of Equalization was created by, and derives its powers from, the state Constitution. The Board is vested wtih broad powers. It is limited to no specific formula, rule or method of valuation, and is free to utilize and apply any and all formulas, rules or methods that are not inhibited by the state or Federal Constitutions. 2 Elliott, Railroads, 3d ed. p. 271. While it exercises quasi-judicial powers, the Board is not circumscribed by the restrictions that apply to a court in the reception and consideration of evidence. The Board "is not obliged to consider only evidence taken before it in the ordinary way. It may base its action in part upon investigation of its members and upon their knowledge of values derived from experience and study." State ex rel. Ely v. Minnesota Tax Commission, 137 Minn 20, 162 NW 675; Chicago, B. & Q. R. Co. v. Babcock, 204 US 585, 51 L ed 636, 27 S Ct 326, supra.

The Board was not required to determine value solely by the guidance of a composite of a five year value based upon the stock and bond method and a five year value based upon capitalization of earnings, even though in former years controlling weight had been given to this method. The members of the Board were justified, and it was their duty, to take into consideration all facts which go to make up the actual value of the railroad property in this state. The stock and bond method and the capitalization of earnings and a composite of these methods based upon a period of time likely to reflect the market value of the property, were doubtless proper matters to be considered by the Board; but the Board was not restricted to these. The value of the physical elements, the cost of construction and of replacement, the present and prospective earning capacity at rates that are reasonable, having regard to traffic available and competitive and other conditions prevailing in

the territory served, were also matters that the State Board of Equalization properly might consider, giving such weight to the different facts as in their judgment, fairly and honestly exercised, they deemed them to be entitled to receive. 2 Cooley, Taxation, 4th ed. § 961; Northern P. R. Co. v. State, 84 Wash 510, 147 P 45, Ann Cas 1916E, 1166 and note at page 1180.

"The ascertainment of the value of a railway system is not a matter of arithmetical calculation and is not governed by any fixed and definite rate. Facts of great variety and number, estimates that are exact and those that are approximations, forecasts based on probabilities and contingencies have a bearing and properly may be taken into account to guide judgment in determining what is the money equivalent—the actual value—of the property." Rowley v. Chicago & N. W. R. Co. 293 US 102, 109, 79 L ed 222, 226, 55 S Ct 55.

Nor were the members of the Board required to accept the testimony of the plaintiff's witnesses as to system value and as to the value of the properties to be deducted as conclusive. It was their duty to consider such testimony together with all other pertinent facts that had been brought to their attention, or were within their knowledge, and to exercise their honest and independent judgment in making their determination as to value. In discussing a similar question in Chicago, B. & Q. R. Co. v. Babcock, supra, the Supreme Court of the United States said: "Evidently the board believed that the figures furnished by the roads were too favorable and were intended to keep the taxes as low as they could be kept. Evidently, also, the members or some of them used their own judgment and their own knowledge, of which they could give no very good account on cross-examination, but which they had a right to use, if honest, however inarticulate the premises." 204 US p. 596, 51 L ed 640, 27 S Ct 326.

While the plaintiff in its complaint alleges "intentional, systematic, unlawful, and discriminatory over-valuation and taxation of plaintiff's property," there was no evidence, and no attempt to introduce any evidence of any arrangement, scheme or plan on the part of the members of the State Board of Equalization to over-value plaintiff's property. 204 US 597, 51 L ed 640, 27 S Ct 326. The evidence adduced by the plaintiff went only to the value of its system and the character and

value of the properties which plaintiff claims should be deducted. There is no claim that the plaintiff was denied an opportunity to present its contentions and proofs to the State Board of Equalization. Not only was such opportunity afforded, but the plaintiff availed itself thereof. A careful consideration of the record leads us to the same conclusion as that voiced by the trial court in his memorandum decision: "There is nothing in the record to indicate that the State Board of Equalization acted in bad faith in assessing plaintiff's property. Nor is there any evidence that said Board over-valued plaintiff's property in comparison with other like properties or in comparison with the property of other classes. There is no evidence of discrimination or that by reason of the assessment plaintiff will necessarily be required to bear a disproportionate share of the tax burden in relation to other property owners in the State of North Dakota."

Both the plaintiff and the Great Northern Railway Company brought action in the district court of the United States to enjoin the collection of the 1933 taxes. The action brought by the Great Northern Railway Company eventually was brought before the Supreme Court of the United States for review and resulted in a decree in favor of the railroad company. Great Northern R. Co. v. Weeks, 297 US 135, 80 L ed 532, 56 S Ct 426. The valuation placed upon the property of the Great Northern Railway Company in North Dakota by the State Board of Equalization in 1933 was $78,832,888. The Supreme Court of the United States held that the challenged assessment exceeded the true and full value of the Great Northern Railway Company's railroad properties in North Dakota in 1933 by $10,000,000, and directed that decree be entered enjoining the State Tax Commissioner from collecting on account of the taxes levied against the railroad company on the basis of the challenged assessment "any amount in excess of such proportion of the taxes levied as . . . $68,832,888.00 is to the assessment, $78,832,888.00, being 87.3149+%." 297 US 153, 80 L ed 543, 56 S Ct 426.

In the suit brought by the Northern Pacific Railway Company, the district court of the United States entered decree holding that the valuation of the North Dakota railroad properties of the Northern Pacific in 1933 exceeded the true and full value of such properties by

$7,968,104, and enjoined the collection of taxes based on a valuation in excess of $53,325,002—being approximately 87% of the valuation fixed by the State Board of Equalization.

The Great Northern Railway Company and the plaintiff, Northern Pacific Railway Company, also, brought suits in the district court of the United States to enjoin the collection of the 1936 taxes.

In 1936, the State Board of Equalization valued the North Dakota railroad properties of the Great Northern Railway Company at $70,-760,060, and the similar properties of the Northern Pacific Railway Company at $45,820,214. The court reduced the valuation of the Great Northern Railway Company properties to $63,070,725, and reduced the valuation of the Northern Pacific Railway Company properties to $41,238,359.

In the decision in Great Northern R. Co. v. Weeks, supra (involving the 1933 taxes), the Supreme Court of the United States said that "Judicial notice must be taken of the fact that late in 1929 there occurred a great collapse of values of all classes of property—railroads, other utilities, commodities and securities, and that the depression then commenced progressively became greater;" that "in making assessments in that period, the board was bound to take into account and give due weight to the sudden, progressive and enormous declines of value;" but that "from 1929 to and including 1933 the board reduced assessments of petitioner's North Dakota railroad properties by less than 6 per cent," although "it is everywhere known that the general decline in values in that period was very much greater than that," and that the evidence showed that such properties had declined several times 6 per cent. 297 US 149, 150, 80 L ed 541, 56 S Ct 426.

In this case, the facts are quite different from those recited in Great Northern R. Co. v. Weeks. In 1939 the State Board of Equalization valued the North Dakota railroad properties of the Great Northern Railway Company at $61,052,793, and the similar properties of the Northern Pacific Railway Company at $41,763,044. The valuation of the properties of the Great Northern Railway Company in 1939 was reduced $7,780,095, or 11.3028+%, as compared with the 1933 valuation as fixed in the decree of the Federal Court as a basis for the computation and collection of taxes; and the valuation of the properties

of the plaintiff, Northern Pacific Railway Company, in 1939 was reduced $11,561,958, or 21.6820+%, as compared with the 1933 valuation as fixed in the decree of the Federal Court as a basis for the computation and collection of taxes.

The general business outlook, and the outlook for the railroad companies operating in North Dakota, was considerably more favorable when the State Board of Equalization fixed the valuation of such properties in 1939 than when either the Board or the Court fixed the valuations for 1933 and 1936. It is a matter of common knowledge that in 1932 and again in 1933, large sections of the state, including much territory served by the plaintiff's railroad, were subjected to a severe drought which greatly decreased the production of all agricultural products in the state, and tended to reduce trade and business generally, and even more so to reduce the business of transportation of agricultural products. The same condition in some degree existed, also, in 1936. In 1939 there was a far better crop outlook, and a far better crop than in either 1933 or 1936, and there was reason to believe that the plaintiff would enjoy a better business and income than in such former years.

The true value of plaintiff's railroad properties in North Dakota in 1939 "was a question of fact, the determination of which for the purposes of taxation was given to this special tribunal, the state board. Whenever a question of fact is thus submitted to the determination of a special tribunal, its decision creates something more than a mere presumption of fact, and if such determination comes into inquiry before the courts it cannot be overthrown by evidence going only to show that the fact was otherwise than as so found and determined. Here the question determined by the state board was the value of certain property. That determination cannot be overthrown by the testimony of two or three witnesses that the valuation was other than that fixed by the board." Pittsburg, C. C. & St. L. R. Co. v. Backus, 154 US at pp. 434, 435, 38 L ed at p. 1039, 14 S Ct 1114. "No assessment could be sustained if it depended upon the fact that all parties thought the valuation placed by the assessing board was correct. Something more than an error of judgment must be shown; something indicating fraud or misconduct." Maish v. Arizona, 164 US at p. 611, 41 L ed at p. 571, 17 S Ct 193; Chicago, B. & Q. R. Co. v. Babcock, 204 US 585,

51 L ed 636, 27 S Ct 326, supra; Rowley v. Chicago & N. W. R. Co. 293 US 102, 79 L ed 222, 55 S Ct 55; Great Northern R. Co. v. Weeks, 297 US 135, 80 L ed 532, 56 S Ct 426, supra; Taylor v. Louisville & N. R. Co. (CCA 6th) 88 F 350.

The plaintiff attacks the judgment of the State Board of Equalization. It is presumed that that judgment is valid; that it is the honest judgment of the Board made conformable to law, and not otherwise. That presumption is conclusive unless it is shown by clear and convincing proof that the Board in making its determination was actuated by a fraudulent purpose, or that it acted in such illegal, wrongful, arbitrary or capricious manner as to constitute a fraud in law, or an excess of jurisdiction on the part of the Board. There is no such proof here. There is no proof of any scheme on the part of the Board to over-assess plaintiff's properties. There is nothing to show there was any intention to discriminate against the plaintiff and in favor of any other taxpayer or taxpayers. There is nothing to show that railroad properties were over-valued as compared with the valuation placed on other classes of property. On the contrary, the record discloses rather that railroad properties were assessed on a lower basis of valuation in 1939 than were farm lands.

The judgment appealed from is affirmed.

Burr, Ch. J., and Nuessle, Burke, and Morris, JJ., concur.