KOCH HYDROCARBON COMPANY, Plaintiff and Appellant,

v.

STATE of North Dakota, acting By and Through the STATE BOARD OF EQUALIZATION, and the Counties of Billings, Divide, Golden Valley, McKenzie, Stark, and Williams, Defendants and Appellees.

Civ. No. 890256.

Supreme Court of North Dakota.

April 12, 1990.

Wheeler Wolf, Bismarck, for plaintiff and appellant; argued by R.W. Wheeler. Appearance by Cathy Ervin and Richard Gilstrap, Koch Hydrocarbon Co.

Robert W. Wirtz (argued), Asst. Atty. Gen., State Tax Dept., Bismarck, for defendants-appellees.

LEVINE, Justice.

Koch Hydrocarbon Company [Koch] appeals from a district court judgment upholding the assessment of Koch's pipeline operating property by the State Board of Equalization [Board]. We affirm.

Koch purchases and processes natural gas and sells the products. Koch owns pipeline operating property used to gather natural gas produced in the counties of Billings, Divide, Dunn, Golden Valley, McKenzie, Stark, and Williams. Effective January 1, 1986, Koch purchased a gas processing plant and additional pipeline operating property from Phillips Petroleum Company for $30,870,000, which was 19 cents on the dollar of Phillips' cost. At issue here is the assessed value of that portion of the pipeline operating property purchased from Phillips which is located in North Dakota. (Phillips' property).

On July 21, 1986, the Tax Commissioner notified Koch that the 1986 tentative true and fair value of all of Koch's North Dakota pipeline operating property was $94,750,-617 and that the tentative central assessed value of that property was $47,375,000. The Commissioner's tentative value for the Phillips' property was based on the sum of Phillips' original cost of the property less

depreciation and the value of Koch's other North Dakota pipeline operating property for a total tentative value of $94,750,617.

On August 6, 1986, Koch appeared before the Board to object to the tentative assessment. It argued that the price paid for Phillips' property was the true and fair value because of depressed prices in the oil industry. However, a member of the Board expressed his view that, at the time of the sale, Phillips was under intense economic pressure from a hostile takeover bid and that he believed the amount paid to Phillips was below market value. The Board noted that Koch's book cost of all of its North Dakota pipeline operating property was about $21,000,000 and adopted a value between the Commissioner's tentative assessment and Koch's book cost, resulting in a centrally assessed value of $35,000,000 and a taxable value of $3,500,000.

Koch paid the taxes under protest and filed an action in district court pursuant to Sections 57–08–03 and 57–08–04, N.D.C.C.,[1] which authorize an action in district court for a reduction in the assessed value of the property and a corresponding refund. Koch alleged that a fair and reasonable allocation of the amount paid Phillips ($30,870,000) to the portion of the pipeline operating property located in North Dakota was $13,901,602. The district court concluded that the Board's assessment was within the sphere of the competent evidence and that the Board did not act arbitrarily, oppressively, or unreasonably in as-

sessing Koch's pipeline operating property.[2] Koch appealed.

We initially consider the scope of review for an action for a refund under Sections 57–08–03 and 57–08–04, N.D.C.C.

In *Northern Pacific Railway Co. v. State*, 71 N.D. 93, 299 N.W. 696 (1941), we addressed the scope of judicial review under a similar statute which permitted the filing of an action to contest the Board's central assessment of railroad property. We concluded that the language which authorized the filing of an "action" in district court was not intended to enlarge the limited scope of judicial review of Board decisions. We held that the Board's assessment was presumed valid unless it was actuated by a fraudulent purpose, or the Board acted in an illegal, wrongful, arbitrary, or capricious manner so as to constitute fraud or an act in excess of its jurisdiction.

We revisited and revised the scope of judicial review of Board assessments in *Soo Line Railroad Co. v. State*, 286 N.W.2d 459 (N.D.1979). Because we deemed the Board to be an administrative agency under Section 28–32–01(1), N.D. C.C., we held that the preponderance of evidence standard under the Administrative Agencies Practice Act [AAPA] governed the scope of judicial review of Board assessments. We concluded that the scope of judicial review set forth in *Northern Pacific* did not apply because that case involved tax assessments for the year 1939, which

---

1. Section 57–08–03, N.D.C.C., provides:
   "*57–08–03. Action against state for refund of excessive taxes paid by utility—Limitation.* Any company claiming to be aggrieved by the levy of a tax upon its property and alleging facts showing substantial injustice in the determination by the state board of equalization, within six months after the payment of the tax under protest, may bring and maintain an action against the state to recover such part of the tax as shall exceed the amount the company should have paid."
   Section 57–08–04, N.D.C.C., provides:
   "*57–08–04. Refund of excess paid by utility.* In case the amount of tax justly and equitably due from a utility shall be determined finally to be less than the amount paid, the excess shall be refunded to the utility by the direction of the court, and for that purpose the

county auditor of each county which was a party to the action, upon the filing in his office of a certified copy of such final determination, shall draw a warrant upon the county treasurer for the amount to be refunded. The amount refunded shall be charged against the funds of the state, county, township, city, school district, or other taxing district in the hands of the county treasurer, or funds which thereafter may be collected in such proportion as the amount refunded bears to the amount collected for the benefit of each such taxing district on the original assessment."

2. The Board's 1987 and 1988 assessments were based upon the 1986 assessment, and the parties stipulated that the court's decision would also apply to 1987 and 1988.

preceded the enactment of the AAPA in 1941. After the *Soo Line* decision, the Legislature amended the AAPA to specifically exclude several governmental entities, including the Board, from the definition of "administrative agency." 1981 N.D.Sess. Laws ch. 337, § 1.

Although the 1981 amendment effectively removed the expressed reason for our holding in *Soo Line*, the unexpressed, underlying rationale for the limited scope of judicial review of Board assessments in both *Northern Pacific* and *Soo Line* is the separation of powers. It is that doctrine that accounts for the limited scope of judicial review of "de novo" appeals from decisions of local political subdivisions [*Shaw v. Burleigh County*, 286 N.W.2d 792 (N.D. 1979)], and also defines the scope of judicial review of decisions by local taxing authorities. *Riverview Place, Inc. v. Cass County*, 448 N.W.2d 635 (N.D.1989); *Ulvedal v. Board of County Commissioners*, 434 N.W.2d 707 (N.D.1989).

▓▓▓ These cases illustrate that the scope of judicial review of non-judicial decisionmaking is, under the separation of powers, limited to whether the decision is arbitrary, capricious, or unreasonable. *Shaw, supra; Riverview Place, supra; Ulvedal, supra.* These cases may have refined and even broadened the scope of judicial review set forth in *Northern Pacific.* We believe that the standard of arbitrary, capricious, or unreasonable is not much different from the standard in *Northern Pacific* and does not justify perpetuating a different scope of judicial review for assessments by the Board than for assessments by local political subdivisions. We conclude that the scope of judicial review of Board assessments is whether the assessment was arbitrary, capricious, or unreasonable.

Koch's argument on appeal consists of three prongs, all of which are interrelated. It contends that the Board's assessment is not supported by the evidence, ignores the methods for valuation prescribed in Section 57–06–14, N.D.C.C., and is based upon hearsay evidence that Koch bought Phillips' property at a price below market value.

Section 57–06–14, N.D.C.C., provides the method of valuation for operative property:[3]

*"57–06–14. Method of valuation.* The operative property of each company assessed under this chapter shall be assessed in the following manner:

"1. For the purpose of determining the value of the property, the tax commissioner and the state board of equalization shall take into consideration the earning power of the property as shown by its gross earnings and net operating income, the market or actual value of its stocks and bonds, the value of its franchises, rights, and privileges granted under the laws of this state to do business in this state, *and such other legally established evidences of value as shall enable the board to make a just and equitable assessment.*

\*     \*     \*     \*     \*     \*

"3. In determining the value of the portion within this state of an interconnected, or continuous system, the tax commissioner and state board of equalization may take into consideration the value of the entire system and of the part within this state, the mileage of the whole system and of the part within this state, the total operating earnings within and without this state, *together with such other information, facts, and circumstances as will enable such officers to make a just and correct assessment."* [Emphasis added].

Section 57–06–05, N.D.C.C., requires the Board, at its annual meeting in August, to assess a taxpayer's operative property as of January 1 of that year. Section 57–06–11, N.D.C.C.,[4] requires the Tax Commis-

---

**3.** Section 57–06–03, N.D.C.C., defines "operative property" as "any and all property reasonably necessary for use by any company mentioned in section 57–06–02 exclusively in the operation and conduct of the particular kind of business engaged in by it."

**4.** Section 57–06–11, N.D.C.C., provides:

sioner to "ascertain and determine the value of all operative property of any company required to be assessed" under ch. 57–06, N.D.C.C., for guidance of the Board at its annual meeting. Pursuant to Section 81–01–01–02(2)(f), N.D.A.C., the "utility tax section [of the tax department] makes annual tentative valuations of railroad and utility properties for use by the tax commissioner to make tentative assessments to submit to the" Board. Section 57–06–15, N.D.C.C.,[5] authorizes the Board to "adopt the tentative assessment of the tax commissioner in whole or in part" and provides that the "valuation and tentative assessments made by the tax commissioner shall be considered merely findings of fact of the executive officer of the board" which the Board may "increase or lower."

■ The foregoing provisions illustrate the Legislature's intent that the expertise of the tax department be brought to bear on the Board's final determination of value. The tentative assessment, which the Legislature requires the Tax Commissioner to formulate, is to "guide" the Board, and is itself to be based on valuations made annually by the tax department. It is elementary that the Legislature does not do or require idle acts. Section 31–11–05(23), N.D.C.C.; *County of Stutsman v. State Historical Society*, 371 N.W.2d 321 (N.D. 1985). The characterization of the Tax Commissioner's assessment as "tentative" does not mean that it is either inconsequen-

tial or unsupported. It means only that it is not conclusive. The Board is to be guided by the tentative assessment but is not foreclosed from considering other factors. The tentative assessment thus is relevant evidence of the value of the operative property.

■ The Commissioner tentatively assessed Koch's pipeline operating property at $47,375,000. The Commissioner's tentative assessment was supported by a worksheet showing the true and fair value for the property purchased from Phillips based on Phillips' original cost less depreciation. Section 57–06–14, N.D.C.C., does not prohibit the Tax Commissioner or the Board from using cost less depreciation as a method of valuation, nor does the language of that provision confine the determination of value to any single consideration. *Cf. Ulvedal v. Board of County Commissioners*, 434 N.W.2d 707 (N.D.1989) [Under Section 57–02–01(15), N.D.C.C., local taxing authorities may consider "all other matters that affect the actual value of the property" in determining true and full value]. We do not believe it can be seriously argued that cost less depreciation is not "such other legally established evidences of value" under Section 57–06–14, N.D.C.C., which the Board could rely upon in making its tentative assessment.

■ Koch nevertheless seeks to have the assessment based on the price it paid

*"57–06–11. Tentative valuation by tax commissioner.* The tax commissioner, on or before July fifteenth of each year, shall ascertain and determine the value of all operative property of any company required to be assessed under the provisions of this chapter. Such determination of value shall be made for the guidance of the state board of equalization in assessing such property at its annual meeting in August. In making such determination of value, the tax commissioner shall be governed by the rules laid down by this chapter, and by such directions as may be given to him by the state board of equalization."

5. Section 57–06–15, N.D.C.C., provides:

*"57–06–15. Assessment by state board of equalization—Notice of increase.* The state board of equalization may adopt the tentative assessment of the tax commissioner in whole or in part. The valuation and tentative assess-

ments made by the tax commissioner shall be considered merely findings of fact of the executive officer of the board. The state board of equalization shall review such valuation and tentative assessment at the time of its annual meeting in August of each year, and then shall make a final assessment of such property. It may increase or lower the entire assessment, or any assessment contained therein, on any item contained within the assessment of any company. Before the state board of equalization may make an increase in the assessed valuation of the property of any such company over the valuation contained in the tentative assessment, notice shall be given to the company of any such proposed increase, and a hearing granted thereon. A ten-day written notice shall be given to the company in such instance, either by mail addressed to the company, or personally served on a duly authorized agent of the company."

for Phillips' property and asserts that the Board improperly relied upon hearsay evidence that Koch bought the property at a price below market value.

In *Northern Pacific Railway Co. v. State, supra,* 71 N.D. at 104, 299 N.W. at 702, we discussed the Board's decision-making process for determining value:[6]

> "The Board is vested with broad powers. It is limited to no specific formula, rule or method of valuation, and is free to utilize and apply any and all formulas, rules or methods that are not inhibited by the State or Federal Constitutions. 2 Elliot on Railroads, 3d Ed., p. 271. While it exercises quasi-judicial powers, the Board is not circumscribed by the restrictions that apply to a court in the reception and consideration of evidence. The Board 'is not obliged to consider only evidence taken before it in the ordinary way. It may base its action in part upon investigations of its members, and upon their knowledge of values as derived from experience and study.'"

The Board was informed that Koch's purchase price represented 19 cents on the dollar of Phillips' cost. We believe that, in view of that information, the Board could rely upon a member's knowledge of a hostile takeover attempt and his belief that Koch's cost did not reflect the market value of the property. More importantly, however, the Board's final assessment of $35,000,000 was between the Commission-er's tentative assessment and Koch's book cost and was within the range of the evidence before the Board. Our limited scope of review does not permit a court to weigh conflicting evidence to determine which version is more convincing. The Board, not a court, is responsible for weighing factual material for tax purposes. *Cf. Ulvedal, supra.* [Under provision for "de novo" review of appeal from local taxing authorities, the taxing authority, not a court, is responsible for weighing conflicting evidence of value]. We conclude that the Board's assessment was not arbitrary, capricious, or unreasonable.

The judgment is affirmed.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

If this were an administrative agency governed by the Administrative Agencies Practice Act, ch. 28–32, NDCC, I have no doubt we would conclude that the record before the State Board of Equalization was inadequate to permit any meaningful judicial review under *any* standard of scrutiny. But, as the majority opinion chronicles, the decision in *Soo Line Railroad Co. v. State,* 286 N.W.2d 459 (N.D.1979), wherein we concluded that the State Board of Equalization was an administrative agency as de-

---

**6.** Although not cited in *Northern Pacific,* 1931 N.D.Sess.Laws, ch. 291, § 9, the predecessor of Section 57–08–14, N.D.C.C., was in effect at that time and provided:

"§ 9. VALUATION, HOW DETERMINED.] The operative property of each company assessed under this act, shall be assessed in the following manner:

"For the purpose of determining the value of the property of each company, the Tax Commissioner and the State Board of Equalization shall take into consideration the earning power of the property as shown by its gross earnings and net operating income, the market or actual value of its stocks and bonds, the value of its franchises, rights and privileges granted under the laws of this state to do business in this state and such other legally established evidences of value as shall enable the Board to make a just and equitable assessment. In the case of companies which own or operate properties or lines partly within and partly without the state, the Tax Commissioner and the State Board of Equalization shall value only the property within the state. In determining the value of the portion within the state, of an inter-connected or continuous system the Tax Commissioner and the State Board of Equalization may take into consideration the value of the entire system, and of the part within the state, the mileage of the whole system and of the part within this state, the total operating earnings within and without the state, together with such other information, facts and circumstances as will enable them to make a just and correct assessment, provided that in case of express and sleeping car companies the term 'mileage' as used in this section shall mean miles run or wheelage made by the cars of such express or sleeping car companies, and in the case of telephone and telegraph companies the term mileage shall mean miles of wire."

fined by § 28–32–01(1), NDCC, was nullified by the 1981 North Dakota Session Laws ch. 337, § 1, which specifically excluded the Board from the definition of an administrative agency. We are therefore left with a statute, § 57–08–03, NDCC, which we have previously construed to provide for judicial review but no statute which requires a record upon which to base such a review. Concededly, the statute is couched in language which requires that the review be in the nature of an independent action rather than an appeal from the decision of the Board, but the doctrine of separation of powers apparently does not permit the court to try the action as it would other original actions brought in the court.

. Because the court must determine whether a board has acted arbitrarily, capriciously or unreasonably on the basis of the evidence before the board and not the court, some record of the proceedings before the board is necessary. Thus we have concluded that even in those instances in which the statute permits a "de novo" appeal from a decision of a board of county commissioners, the district court is "permitted to continue to hear testimony and receive exhibits, but that evidence must be viewed in light of the findings, if any, the decision, and the reasons given therefor by the boards of county commissioners." *Shaw v. Burleigh County*, 286 N.W.2d 792, 796 (N.D.1979). In so .concluding we observed:

> "From an evolutionary standpoint, we have allowed the district court to hear testimony, receive exhibits, and make a decision as it would in any trial, without regard to the findings and decisions of the Board of County Commissioners. [Citation omitted.] The practical reason for allowing the district court to proceed in this manner is that there is no complete record of the proceedings before the Board. The proceedings at the county agency level are not transcribed. [Citation omitted.] However, if the Legislature intended to provide that the court should substitute its judgment for that of the Board, totally disregarding the Board's findings, then such intent cannot

be carried out. The Legislature may not constitutionally delegate to the judiciary duties which are essentially administrative in character." *Id.*

Here there is no doubt that the Legislature did not intend the courts to substitute their judgment for that of the Board, for § 57–08–03 specifies that the plaintiff in an action brought under that section is entitled to a refund if the facts show "substantial injustice in the determination by the state board of equalization...." The procedure is not totally unlike that crafted by teachers who claim they were wrongfully denied renewal of their teaching contracts. *See, e.g., Belcourt v. Fort Totten Public School District No. 30*, 454 N.W.2d 703 (N.D.1990); *Dobervich v. Central Cass Public School District*, 302 N.W.2d 745 (N.D.1981). But in those instances there was considerable "evidence" adduced before the board. Here there was little if any evidence presented to the State Board of Equalization other than the Tax Commissioner's tentative valuation as provided in § 57–06–11, NDCC, and the observation of a member of the Board that Phillips was under intense economic pressure from a hostile takeover bid.

That record, compared with that before the county board of equalization in *Riverview Place, Inc. v. Cass County*, 448 N.W.2d 635 (N.D.1989), reveals substantial differences which exist in proceeding before the various boards and the record, if any, resulting therefrom. It raises a question in my mind as to whether or not we ought to adhere to a similar standard of review, in both instances, *i.e.*, whether or not the action was arbitrary, capricious, or unreasonable. Perhaps we ought to conclude that a meager or nonexistent record, similar to the one in this instance, will necessarily result in a conclusion that the action was arbitrary, capricious, or unreasonable. Or, we ought to recognize, in some fashion, that the Legislature did not intend the same standard of review for those cases in which it provided for an appeal de novo, such as that specified by § 11–11–43, NDCC, prior to its amendment

in 1989,[1] and the "review" in this instance wherein the Legislature specified not an appeal but a separate action by the utility which must allege and prove "substantial injustice" in order that it be entitled to a refund of the taxes paid. That section, § 57–08–03, when read in conjunction with §§ 57–06–11 and 57–06–15, providing for a tentative valuation by the tax commissioner, appears to require a conclusion that the Legislature intended the valuation to be presumptively[2] correct notwithstanding the evidence or lack thereof before the Board, and only when the utility can prove in district court by independent evidence that the assessment created a "substantial injustice" will it be entitled to judicial relief. Such a conclusion recognizes the differences in the procedure prescribed by the Legislature for judicial action as well as the apparent difference it intended in the scrutiny it desired from that judicial review by appeal on the one hand and judicial intervention by way of a separate action on the other hand.

Because I believe we should recognize the difference and because, on the record before us, I cannot discern that Koch bore its burden of proving a substantial injustice at the trial court by independent evidence, I concur in the result. Were it not for this difference I would favor a remand to the Board for further proceedings wherein a record adequate to permit review should be made. I believe it is misleading and deceptive for the legislative and judicial branches to pretend there is a meaningful review of the Board's action on the basis of the record before us. Only by construing the statutes to place the total burden on Koch to rebut the presumptive validity of the Tax Commissioner's tentative assessment and the presumption that Phillips sold its property to Koch at less than market value am I able to agree to affirm this result. I cannot agree or disagree that on the record before us the Board did not act arbitrarily, capriciously or unreasonably, for the record does not permit a review which could justify either conclusion. If the courts are to review these actions, and it is not necessary as a matter of constitutional right that they be empowered to do so, it should be a meaningful review recognizing the limitations thereon by the doctrine of separation of powers. Anything less than a meaningful review gives a false sense of adherence to our system of checks and balances which makes the judicial branch little more than an apologist for the actions of the executive branch of government, on the one hand, or a usurper of powers on the other. Neither is a desirable result.

1. Section 28–34–01, NDCC, enacted by the Legislative Assembly in 1989, and the amendment of other statutes deleting the provision for a "de novo" review apply only to "local governing bodies" which are defined to include any officer, board, commission, resource or conservation district or other political subdivision. Because the State Board of Equalization is a state agency, § 28–34–01 apparently does not apply.

2. The conclusion that the Tax Commissioner's tentative valuation and the valuation placed upon the property by the Board are presumptively correct arises not only from the "substantial injustice" language of § 57–08–03, but also from the provisions of § 57–06–15, which require that only when the Board increases the tentative assessment must it give notice to the utility of any such proposed increase. Although the valuation and tentative valuation are only for "the guidance of the state board of equalization in assessing such property" and are to "be considered merely findings of fact of the executive officer of the board" insofar as the board is concerned, the opinion of the majority gives them a much greater role insofar as the utility is concerned, for if they have no presumptive validity there is only the rankest hearsay evidence that Phillips was under economic stress to overcome the price paid by Koch for the property in question. Moreover, cost-less-depreciation, or business-as-usual, is apparently the only basis for the Tax Commissioner's evaluation and assessment. It ignores Koch's purchase price. The Board obviously reached a compromise approximately midway between the two. In view of the fact the utility can prevail only if the determination by the Board creates a "substantial injustice," it appears that the statute does not require preciseness in valuation and assessment. It only prohibits "substantial injustice."