**Application of the BANK OF RHAME for Change of Location of Corporate Headquarters and Change of Corporate Name.**

No. 9096.

Supreme Court of North Dakota.

June 25, 1975.

As Amended July 11, 1975.

Wheeler, Wolf, Wefald & Durick, Bismarck, for Bank of Rhame; argued by Albert Wolf and B. Timothy Durick, Bismarck.

Zuger & Bucklin, Bismarck, for First National Bank of Bowman; argued by John A. Zuger, Sr., Bismarck.

SAND, Judge.

The Bank of Rhame, a State chartered bank, located at Rhame, North Dakota, made application to the North Dakota Banking Board [hereinafter the Board] for authority to remove its location to Bowman, North Dakota, to change its corporate name to State Bank of Bowman County, North Dakota, and to establish a paying and receiving station in Rhame, North Dakota. The Board issued a notice of the hearing on the first two parts of the application, which notice was published in the Bowman County Pioneer on December 26, 1973, January 2, 1974, and January 9, 1974, and in addition thereto a copy of the notice was sent by certified mail to John Rouzie, the President of the First National Bank, Bowman, North Dakota. Pursuant to such notice, the application came on for hearing before the Board on January 15, 1974, at 2:00 p. m. in the State Capitol, Bismarck, North Dakota.

The applicant Bank of Rhame was represented by Albert Wolf and B. Timothy Durick of Wheeler, Wolf, Wefald & Durick; and appearing in opposition was John A. Zuger, of Zuger, Bucklin & Zuger, representing First National Bank of Bowman.

The Board made its findings of fact, conclusions of law and decision on June 28, 1974, wherein it approved the application for removal of the Bank of Rhame to Bowman, North Dakota, and to change its name to State Bank of Bowman County, subject to five enumerated conditions.

First National Bank appealed the decision of the Board to Burleigh County district court. The district court reversed the decision of the Board and its judgment was entered on January 2, 1975. Subsequent thereto the Bank of Rhame served and filed a motion challenging the district court's jurisdiction and the right of First National Bank to appeal the decision to the district court. The district court denied the motion, whereupon the Bank of Rhame appealed to this court from the two decisions of the district court.

The issues argued and presented to this court are as follows:

Did the First National Bank of Bowman have standing to appeal the decision of the Board to the Burleigh County district court, and did the court have jurisdiction of the subject matter?

Did the court err in reversing the decision of the Board?

The applicant Bank of Rhame argues that First National Bank of Bowman [hereinafter National Bank] pursuant to the provisions of Section 6–01–05, North Dakota Century Code, had no standing to appeal, and as such the district court did not have jurisdiction. Section 6–01–05 provides as follows:

"The board, the state examiner, and the deputy examiners each shall have the power to subpoena witnesses, administer oaths, and generally to do and perform any and all acts and things necessary to

the complete performance of the powers and duties imposed upon them in this title, and to enforce the provisions of law relating to financial institutions. For the purpose of enabling them to perform all the duties imposed upon them, the provisions of section 27–10–23 shall be applicable to their proceedings. Any and all orders made by the board shall be operative immediately and shall remain in full force until modified, amended, or annulled by the board, or by a court of competent jurisdiction in an action commenced by the party against whom such order has been issued." ·

Upon careful examination, we conclude that this section is not dispositive of this issue. The principal design of this section was to provide a safety valve for orders issued by the Board by giving the party against whom the order was issued an opportunity to commence an action which includes a review for relief in a competent court. This section was enacted some time prior to the enactment of the Administrative Agencies Practice Act and has not been amended since, but nevertheless this court, in Youmans v. Hanna, 35 N.D. 479, 160 N.W. 705, 714 (1916), referred to the statute and said:

"It is also clear that such a remedy or method of review was prescribed by the Legislature, and that no such relief was ever applied for or resorted to."

This statement was made in relation to an order of the State Banking Board against a bank. The parties in the *Youmans* case which prompted the statement were state officials, of which some were ex officio members of the Board, as defendants, and Youmans as the majority stock owner of the bank, as plaintiff, at the time the order was issued. It is not clear whether the court meant that the bank itself could have or should have sought a review or that Youmans, the owner of the majority stock, could have and should have sought review under the statutory language. This case, however, does not stand for the proposition that the statutory language is to be given a narrow or limited construction as to who is a proper party for purposes of seeking a review or appeal. Whatever distinction may have been in existence between a review and an appeal has now been somewhat resolved by the adoption of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C.

National Bank contends that in any event it is a proper party under the provisions of the Administrative Agencies Practice Act and that the Board in fact considered it a party by giving notice of a hearing by certified mail to John Rouzie, President of National Bank, by furnishing a copy of the transcript of the hearing, and by giving National Bank a copy of the decision as provided for in Chapter 28–32.

National Bank contends that by these actions and because of its interest in the subject matter it was a party, as such term is used in Section 28–32–15, N.D.C.C., which provides, in part, as follows:

"Any party to any proceeding heard by an administrative agency . . . may appeal from such decision within thirty days after notice thereof has been given . . . . Such appeal may be taken to the district court designated by law, and if none is designated, then to the district court of the county wherein the hearing or a part thereof was held."

"Administrative agency" is defined in Section 28–32–01, N.D.C.C. This court summarized this definition in First American Bank & Trust Company v. Ellwein, 198 N.W.2d 84, 93 (N.D.1972), in the following manner:

"An administrative agency is defined by our statute to include:

"(1) Any board or commission, and

"(2) Any officer

having statewide jurisdiction and authority to make any findings, determination or orders, award or assessments which have the force and effect of law; and which findings and decisions are by express

statute subject to review by the courts of this state (§ 28–32–01, N.D.C.C.)."

This court then concluded that the State Banking Board is an administrative agency:

"(1) Because it has statewide jurisdiction over all banks and financial institutions;

"(2) Because it has the express power and duty to make rules and regulations for the government thereof which have the force and effect of law;

"(3) Because it has the power and duty to file and serve complaints, specify issues for hearing, give reasonable notice to all parties interested, afford them an opportunity for a fair hearing, to make specific findings of fact and conclusions of law and render a decision based thereon, which by express statute are subject to judicial review."

There appears to be no question that the decision of the Board is subject to review or appeal. Once it has been determined that certain acts of the Board come within the provision of Chapter 28–32, its provisions apply. The express statutory provisions providing for review, as set forth in Section 6–01–05, N.D.C.C., satisfies the requirement of subsection 1 of Section 28–32–01 relating to the decision being subject to review in the courts of this State.

This resolves the question whether or not the decisions of the Banking Board are subject to review on appeal even though it does not resolve the question of who is or is not a proper party to seek review on appeal.

We recognize the difference between determining whether or not a decision is subject to review or appeal and who are parties for purposes of seeking a review or an appeal. The conclusions reached in Dakota National Insurance Co. v. Commissioner of Insurance, 79 N.D. 97, 54 N.W.2d 745 (1952), and Krueger v. American Christian Mutual Life Insurance Company, 77 N.D. 436, 43 N.W.2d 676 (1950), have no application here because they were concerned primarily with the question whether or not a review or

appeal was available. These cases determined the question whether or not an appeal may be taken, and that Chapter 28–32 does not of itself provide for an appeal but merely regulates the appeal or review if such right or remedy was expressly granted by other statutes.

The application by the Bank of Rhame also asked for authority to establish a paying and receiving station at Rhame. Section 6–03–16, N.D.C.C., among other things, provides for notice to all banking institutions within a radius of fifteen miles at least thirty days before the hearing. However, the notice of hearing on the instant application by the Bank of Rhame did not include the application for a paying and receiving station, and thus the provisions of Section 6–03–16 did not specifically become operative here. Nevertheless, when we consider the overall purpose of the notice we find it difficult to accept as a legal conclusion that notice to all banking institutions is required in applications for paying and receiving stations but not for the location of a bank or the relocation of a bank. We believe it is proper to conclude that in instances where the proceedings come within and are carried out pursuant to the provisions of Chapter 28–32, N.D.C.C., its provisions apply and govern, particularly on such matters as notice and proper parties, unless expressly provided otherwise by separate statutory provisions.

■ We should not and do not place a narrow or limited construction upon the appropriate statutory provisions governing who may be a party for purposes of appeal or review. The law on standing developed by earlier case law which was narrow and limited has been severely criticized by Davis in Administrative Law Treatise, 1970 Supplement, Chapter 22, beginning on page 702. But this alone does not constitute justification for this court to give a right of appeal or review to a party not granted such right by appropriate statutory law.

The Federal Circuit Court of Appeals, Eighth Circuit, in Webster Groves Trust

Company v. Saxon, 370 F.2d 381 (1966), on page 388, said:

"The Comptroller is also asserting that a competitor has no standing to object to lawful competition. With this rule we find no fault, but the banks surely have the standing to object to illegal competition. Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929); National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537 (6 Cir. 1958), cert. denied 358 U.S. 830, 79 S.Ct. 503 [3 L.Ed.2d 69]. Therefore, when a competitor believes he is being subjected to illegal competition owing to impropriety by the Comptroller, the courts should be open to hear and decide the alleged wrong. The trial court was vested with jurisdiction over the subject matter of this litigation."

This principle of law is entitled to serious consideration.

We are also mindful that our judicial process is designed for, employs, and relies heavily upon the adversary system for its administration of justice. The adversary system applies throughout the various stages of the judicial process, including appeal. We are also mindful that the Board in a number of instances, depending upon the nature of the action, appears as a party in appellate procedures involving decisions rendered by the Board. In other instances the Board does not appear. In this particular instance the Board made no appearance in the district court nor did it make any appearance before this court. This serves as additional support for the conclusion that the Board believed that this was an adversary proceeding and that National Bank had standing to appeal the decision of the Board and that the Bank of Rhame would, as in fact it did, respond to the appeal and defend the decision of the Board. This is in complete harmony with the concept of adversary proceedings. If, however, the Board were not to appear on any cases decided by it, the adversary process would be denied its full application.

The Administrative Agencies Practice Act does not define the term "party" but does define the term "person" to include "individual, association, partnership, and corporation." We also find that the provisions of Chapter 28–32, N.D.C.C., use the term "person" particularly with reference to such matters as petitioning the agency to modify or amend the rule or regulation promulgated by the agency. Section 28–32–04, N.D.C.C. In other provisions it refers to "party" or "party proceeded against." In a number of instances the Act refers to "any party to the proceeding" or "all the parties to the proceeding." (Sections 28–32–12 and 28–32–13, N.D.C.C.).

Section 28–32–14 states in part that "any party before an administrative agency who is aggrieved by the decision" may request a rehearing. However, Section 28–32–15 merely provides that "any party to any proceeding heard before the administrative agency . . . may appeal from such decision . . . ."

The term "party" is defined in Black's Law Dictionary 1278 (4th ed. 1957), as

"A person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually.

" 'Party' is a technical word, and has a precise meaning in legal parlance. By it is understood he or they by or against whom a suit is brought, whether in law or equity; the party plaintiff or defendant, whether composed of one or more individuals, and whether natural or legal persons, (they are parties in the writ, and parties on the record;) and all others who may be affected by the suit, indirectly or consequentially, are persons interested, but not parties.

" 'Party' is not restricted to strict meaning of plaintiff or defendant in a lawsuit, being defined as one concerned in or privy to a matter as in the relation of accessory or confidant, and again a partial person, one who takes sides."

Black's Law Dictionary also defines "party aggrieved."

"Under statutes permitting any party aggrieved to appeal, one whose right has been directly and injuriously affected by action of court."

We further note that the same authority classifies "party" into formal, proper, necessary, and indispensable parties, as well as nominal parties.

From this we can observe that the term "party" has various meanings depending upon the context in which it is used and the nature of the subject matter.

The same authority also defines "parties."

"The persons who take part in the performance of any act, or who are directly interested in any affair, contract, or conveyance, or who are actively concerned in the prosecution and defense of any legal proceeding."

The question of who is a proper party should not be resolved on strict technical grounds which could result in the public being denied the opportunity to question the actions of the governing agency, body or board, as the situation may be.[1] Any doubt on the question of standing involving a decision by an administrative body should be resolved in favor of permitting the exercise of the right of appeal by any person aggrieved in fact.

■ Generally, parties to an action or proceedings are set out in the title of the action or proceedings. However, in matters before administrative agencies it is common to entitle the proceedings "IN THE MATTER OF ___." Such entitlement does not serve as an aid in determining who is a party, except for the applicant, on which there is no question. The question of who are parties to the proceedings must be determined from the record rather than from the entitlement of the proceedings. The information as disclosed by the record constitutes the basis upon which a determination can be made as to who are parties to the proceedings.

■ We believe that any person who is directly interested in the proceedings before an administrative agency who may be factually aggrieved by the decision of the agency, and who participates in the proceeding before such agency, is a "party" to any proceedings for the purposes of taking an appeal from the decision.

■ There is very little, if any, question that National Bank participated in the proceedings, was a party having a direct interest in the subject matter, and claimed to be factually aggrieved by the proceedings, even though it may not have been a party as such term is used in Section 6–01–05, N.D.C.C. We therefore conclude that National Bank is a party as contemplated by Section 28–32–15, N.D.C.C., and as such it had the right to appeal. The district court had jurisdiction of the subject matter and therefore could rule on the appeal and on the motion.

We now address ourselves to the appeal as presented to this court on the issue whether or not the district court erred in reversing the decision of the Board.

■ Our review is limited to the provisions of Section 28–32–19, N.D.C.C., which provides as follows:

"The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency, or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall con-

---

1. We are not suggesting in the slightest that the Board has acted illegally or did act illegally.

stitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this chapter have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact. If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

and Section 28–32–21, N.D.C.C., which provides as follows:

"The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as any case tried to the court without a jury may be reviewed, except that the appeal to the supreme court must be taken within three months after the service of the notice of entry of judgment in the district court."

In Geo. E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau, 171 N.W.2d 104 (N.D.1969), this court, on page 111, said:

"However, we are now inclined to believe that a trial de novo in the district court on the record made before the administrative agency and in this court on an appeal from the district court, as it relates to a determination of the facts, should be limited to determining whether there is substantial evidence to support the administrative agency's findings of fact. Any other construction of the statutes ignore the provision of § 28–32–19 which requires that after a hearing on an

appeal from a decision of an administrative agency, the court shall affirm the decision of the agency unless it shall find that the findings of fact made by the agency are not supported by the evidence."

The court then observed that the statutory provisions providing for review in the Supreme Court must be construed so as not to substitute the judgment of the Supreme Court for the judgment of the Workmen's Compensation Bureau. The court continued by saying that this is not the first time that this court has stated and applied the substantial evidence rule on appeals in administrative proceedings, and quoted from the case of Williams Electric Co-op, Inc. v. Montana-Dakota Utilities Co., 79 N.W.2d 508, 515 (N.D.1956), as follows:

" 'This court has held that the courts do not have the jurisdiction, primarily, to decide administrative questions assigned to the public utilities commission (PSC) for determination and where such commission in its proceedings furnishes due process of law and there is substantial evidence to support the findings of the commission, the courts have no authority to substitute their judgment for that of the commission. Application of Theel Bros. Rapid Transit Co., 72 N.D. 280, 6 N.W.2d 560; Application of Ditsworth, 78 N.D. 3, 48 N.W.2d 22. See also Great Northern Ry. Co. v. McDonnell, 77 N.D. 802, 45 N.W.2d 721.' "

See also, Application of Northern States Power, 171 N.W.2d 751 (N.D.1969), and In re Township 143 N., Range 65 West, Cass County, 183 N.W.2d 520 (N.D.1971).

In O'Brien v. North Dakota Workmen's Compensation Bureau, 222 N.W.2d 379 (N.D.1974), on page 381, this court said:

"Where the decision of the administrative agency has been reviewed by the district court and an appeal is taken to this court, we do not follow the 'clearly erroneous' rule of Rule 52(a), North Dakota Rules of Civil Procedure. Instead, we follow the specific statutory guide-

lines contained in the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., and particularly Section 28–32–19, which were not superseded by the Rules of Civil Procedure. [See Rule 86(b), N.D.R.Civ.P.] Section 28–32–19 provides that the trial court, to which the action of the administrative agency is appealed,

'shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this chapter have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact.'

"We have decided several times, most recently in Suedel v. North Dakota Workmen's Compensation Bureau, 218 N.W.2d 164 (N.D.1974), that the scope of our review of an administrative agency's findings of fact is the same as that of the district court and is

'. . . limited to determining whether there is substantial evidence to support the administrative agency's findings of fact.' [Quoted from Haggart v. North Dakota Workmen's Compensation Bureau, 171 N.W.2d 104, 105 (N.D.1969).]

"Questions of law are fully reviewable and conclusions of law are not fortified by the 'clearly erroneous' rule. Northwestern Bell Telephone Co. v. Board of Commissioners of City of Fargo, 211 N.W.2d 399 (N.D.1973); Ferguson v. Ferguson, 202 N.W.2d 760 (N.D.1972)."

Thus our review initially is on the record as made by the administrative agency and whether or not its decision is in accordance with the law as set out in Section 6–03–13, N.D.C.C., as amended, which provides as follows:

"An association organized to do business in any city in this state, and which has sold or converted its business to a national bank or to any other banking association which is continued at the same place, shall not use its charter to recommence business at another place without first obtaining the consent of the state banking board. When a banking association which has not so converted or sold its business is located at a place where there is not, or can reasonably project that there will not be, sufficient business for the profitable conduct of a bank, such association may apply to the state banking board for authority to remove its business to some other place within the state and to change its name if desired, and upon the approval of such application, by the board and the proper amendment of the articles of incorporation, the board may issue authority for such removal and change. No such association, however, shall be permitted to remove its business to any city unless it has the full amount of capital stock and surplus required by this title for a new organization in such city."

It may be helpful to note the amendments adopted in the foregoing provision in 1969, which deleted the language, "it clearly can be shown that" immediately following the first "When" from the prior Act and added the language, "or can reasonably project that there will not be" immediately preceding the phrase, "sufficient business."

■ It is readily observed that the statutory provision now is not confined to clearly showing that the banking association is at a place where there is not sufficient business, but also permits the Board to take into account evidence from which it can be reasonably projected whether or not there will be sufficient business for a profitable operation of a bank. But we do not believe that the term "profit" is limited to a mere

addition of funds acquired from business transactions and the deduction of ordinary expenses. We can well appreciate that the term "profit" has a different meaning from one business to another, and furthermore we recognize that the term "profit" can mean different things depending on the bookkeeping and accounting methods employed. We are, however, satisfied that the amendments made in 1969 gave the Board greater latitude and will permit the Board to take into account future developments.

■ The subject matter under consideration by the Board calls for difficult and expert judgment, particularly in the analysis of facts. It calls for subtle and sometimes even intangible factors not easily expressed in precise or qualified terms. This is particularly true in such matters and instances where extrapolation is necessarily appropriate and employed. It is more than merely or simply counting and subtracting commonplace data or numbers. It requires expertise to fully understand and correctly interpret data relating to financial institutions, market area and other similar business.

The Board's findings under these conditions are entitled to great weight. The court should not substitute its judgment for that of the Board in the interpretation and extrapolation of the evidence upon which the findings are predicated.

The function of this court, in this respect, on review is limited to determining if there is substantial evidence in the record to support the findings. O'Brien v. Workmen's Compensation Bureau, 222 N.W.2d 379 (N.D.1974); Agnew v. Hjelle, 216 N.W.2d 291 (N.D.1974), and Geo. E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau, 171 N.W.2d 104 (N.D.1969).

■ The United States Supreme Court in Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131, (1966) in an appeal from a Circuit Court of Appeals' decision, had under consideration the Federal Administrative Procedure Act

which also provided the method of review by the courts. The Act provided that the review court could " 'set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, [or] an abuse of discretion . . . [or] (5) unsupported by substantial evidence . . . .' " The Circuit Court of Appeals had applied erroneous standards of review or misconstrued the substantial evidence rule. The Supreme Court, in affirming the agency's decision and reversing the Circuit Court of Appeals, stated:

"We have defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [Citations omitted.] [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [Citations omitted.] This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. [Citations omitted.]"

The court, in its footnote 18, also observed that the definition of "substantial evidence" as used by the court in the Consolo case was used in two prior cases before the Administrative Procedure Act was enacted.

Davis, Administrative Law Treatise, 1970 Supplement, Chapter 29, Scope of Review of Evidence, on page 996, stated that a glaring violation by the Court of Appeals for the District of Columbia of the established system of scope of review was corrected by the Supreme Court in the Consolo case.

We believe the Consolo case constitutes good authority and valid reasons why this court should follow the same definition for purposes of determining whether or not there was substantial evidence to support the findings, particularly where the expertise of the administrative agency is essen-

tial and entitled to proper respect and weight because the subject matter is of a technical nature. This rule may not always have the same application where the subject matter is readily understood by laymen.

 Taking into account the expertise required in making meaningful analysis or extrapolation of evidence and by considering the evidence relating to the population decline of Rhame, the loss of business places, the location of material businesses for farming communities and areas, the gross sales from the city of Rhame, customers' use of the Bank of Rhame, particularly the information on the area from which the Bank of Rhame draws its customers (depositors, demand depositors and customer loans) which discloses that over fifty percent or more of the customers are from an area outside of the city of Rhame, and the loss of business (places) in the city of Rhame, and by taking into account the entire record (including all of the evidence submitted), we conclude that there is substantial evidence to support the findings made by the Board.

The judgment of the district court is reversed and vacated and the judgment of the State Banking Board is affirmed.

ERICKSTAD, C. J., PAULSON and PEDERSON, JJ., and A. C. BAKKEN, District Judge, concur.

VOGEL, J., did not participate.