SOO LINE RAILROAD COMPANY,
Plaintiff and Appellant,

v.

The STATE of North Dakota, acting by and through the State Board of Equalization; the County of Barnes; the County of Benson; the County of Bottineau; the County of Burke; the County of Burleigh; the County of Cass; the County of Cavalier; the County of Dickey; the County of Divide; the County of Emmons; the County of Foster; the County of Grand Forks; the County of LaMoure; the County of Logan; the County of McHenry; the County of McIntosh; the County of McLean; the County of Mountrail; the County of Nelson; the County of Pierce; the County of Ramsey; the County of Ransom; the County of Renville; the County of Richland; the County of Rolette; the County of Sargent; the County of Sheridan; the County of Stutsman; the County of Towner; the County of Walsh; the County of Ward; the County of Wells, Defendants and Appellees.

Civ. No. 9625.

Supreme Court of North Dakota.

Dec. 5, 1979.

On Denial of Rehearing Dec. 20, 1979.

Pearce, Anderson, Thames & Durick, Bismarck, for plaintiff and appellant; argued by William P. Pearce, Bismarck.

Robert W. Wirtz and Kenneth M. Jakes, Sp. Asst. Attys. Gen., Bismarck, for defendants and appellees.

William S. Murray, Bismarck, amicus curiae.

PAULSON, Justice.

The Soo Line Railroad Company ["Soo Line"] brought three actions pursuant to § 57–08–03 of the North Dakota Century Code [1] in Burleigh County District Court, seeking an adjudication that its 1974, 1975, and 1976 property tax assessments by the State Board of Equalization ["Board"] are void and that the amounts of the tax paid in excess of the assessment which could lawfully have been levied should be refunded. The district court consolidated the three actions for trial because the parties were identical and the cases involved closely related questions of law or fact. The cases are identical except that the figures used in determining the assessments and tax computations vary from year to year. The district court entered judgment in favor of the Board and dismissed the actions. The Soo Line appeals from that judgment. We reverse the judgment of the district court and remand to the State Board of Equalization for reasons stated in the opinion.

The Soo Line is an interstate carrier of freight by rail which operates in a number of midwestern States, including North Dakota. The portion of the Soo Line system located in North Dakota consists of 1320 miles of track. This track is composed of a main line running from Portal in Burke

---

1. Section 57–08–03, N.D.C.C., provides:

"*Action against state for refund of excessive taxes paid by utility—Limitation.*—Any company claiming to be aggrieved by the levy of a tax upon its property and alleging facts showing substantial injustice in the determination by the state board of equalization, within six months after the payment of the tax under protest, may bring and maintain an action against the state to recover such part of the tax as shall exceed the amount the company should have paid."

County on the Canadian border in a southeasterly direction to Fairmount in Richland County on the Minnesota border, and several branch lines which serve many smaller communities throughout the State. The Soo Line passes through several counties in North Dakota.

The counties receiving any portion of the taxes paid by the Soo Line were joined as parties pursuant to § 57–08–04, N.D.C.C.[2] By stipulation, the Board appeared on behalf of all of the defendants. The parties also stipulated that the amounts of tax not in dispute could be treated by the respective counties as though no protest had been made.

The bulk of the eastbound freight on the Soo Line consists of raw materials originating in Canada and grain and sunflower seeds originating in agricultural States like North Dakota. The westbound freight consists primarily of manufactured goods being shipped from the eastern States to the western provinces of Canada. Approximately three-fourths of the westbound railroad cars are empty. Although much of the rail traffic in North Dakota involves the movement of coal, the Soo Line carries very small amounts of coal because it does not service the coal-rich regions of the State.

The Soo Line places considerable emphasis on the fact that the railroad industry is in a state of decline, having lost considerable amounts of business to other modes of transportation. The Board counters that although the railroads' share of the transportation business has declined, its business has increased in volume due to the growth of the nation's economy. The revenue growth of the railroads has certainly been less than that of the other transportation industries, making it virtually impossible for the railroads to raise capital by selling stock. The Soo Line argues that the railroad industry is economically unfeasible now and in a state of obsolescence, and that these factors should be taken into consideration in computing its tax assessments.

■ Section 57–05–01, N.D.C.C. [S.L. 1967, ch. 425, § 1], which was effective at the time the 1974, 1975, and 1976 assessments were made, provided:

"57–05–01. *Railroad property to be assessed by state board of equalization.* —The state board of equalization, at its annual meeting in August in each year, shall assess at its actual value, the operating property, including franchises, except that if any railroad allows any portion of its railway to be used for any purpose other than the operation of a railroad thereon, such portion of its railway while so used shall .be assessed in a manner provided for the assessment of other real property, of each railroad operated in this state, including any electric or other street or interurban railway. To enable said board to make a correct valuation of such property, it shall have access to all reports, estimates, and surveys of a line of railroad on file in the office of the public service commission and shall have power to summon and compel the attendance of witnesses, and to examine such witnesses under oath in any matter relating to the value of such property. In fixing the value of any such railroad, and of the branches and sidetracks thereof, the board shall be governed by the rules prescribed for county and township assessors in valuing other property in this state. The board shall make a record of the value placed by it upon the property of the railroad, including the valuation per mile of main line and of branch lines and sidetracks."

2. Section 57–08–04, N.D.C.C., provides:

"*Refund of excess paid by utility.*—In case the amount of tax justly and equitably due from a utility shall be determined finally to be less than the amount paid, the excess shall be refunded to the utility by the direction of the court, and for that purpose the county auditor of each county which was a party to the action, upon the filing in his office of a certified copy of such final determination, shall draw a warrant upon the county treasurer for the amount to be refunded. The amount refunded shall be charged against the funds of the state, county, township, city, school district, or other taxing district in the hands of the county treasurer, or funds which thereafter may be collected in such proportion as the amount refunded bears to the amount collected for the benefit of each such taxing district on the original assessment."

This means that the Board shall annually assess at its actual value the operating property of each railroad within the State. This is also required by § 179 of the North Dakota Constitution, which provides:

"*Section 179.* All taxable property except as hereinafter in this section provided, shall be assessed in the county, city, township, village or district in which it is situated, in the manner prescribed by law. The property, including franchises of all railroads operated in this state, and of all express companies, freight line companies, dining car companies, sleeping car companies, car equipment companies, or private car line companies, telegraph or telephone companies, the property of any person, firm or corporation used for the purpose of furnishing electric light, heat or power, or in distributing the same for public use, and the property of any other corporation, firm or individual now or hereafter operating in this state, and used directly or indirectly in the carrying of persons, property or messages, shall be assessed by the State Board of Equalization in a manner prescribed by such state board or commission as may be provided by law. But should any railroad allow any portion of its railway to be used for any purpose other than the operation of a railroad thereon, such portion of its railway, while so used shall be assessed in a manner provided for the assessment of other real property."

The Board assessed the operating property of the Soo Line for the years 1974, 1975, and 1976 in accordance with the provisions of § 179 of the North Dakota Constitution and § 57–05–01, N.D.C.C. [S.L.1967, ch. 425, § 1].

Section 57–02–27, N.D.C.C., in pertinent part, requires:

"*Property to be assessed at full value— Limitation on assessment of annexed agricultural lands.* All property subject to taxation based on the value thereof shall be assessed at its true and full value in money. . . ." [S.L.1973, ch. 337, § 4.]

Section 57–02–01(4), N.D.C.C. [S.L.1969, ch. 469, § 11], which defined "true and full value" and which was the definition in effect at the time the assessments were made for the years 1974, 1975, and 1976 involved in the instant case, provided that:

"4. 'True and full value' means the *usual selling price* at the place where the property to which the term is applied shall be at the time of the assessment, that being the price at which it could be obtained at private sale, and not at a forced public auction sale. In arriving at the true and full value, consideration may be given to the earning or productive capacity, if any, the market value, if any, and all other matters that affect the actual value of the property to be assessed;" [Emphasis added.]

Because railroads are not usually bought and sold on the open market, there is no "usual selling price".

The historical method of assessing railroad property is to first determine the value of the entire system and then allocate the proper portion of that system value to North Dakota. The goal of allocation is to fairly reflect the relation between the whole system and any given part of it. Approximately fifteen percent of the Soo Line system is in North Dakota. The parties are not in dispute as to the proper amount to be allocated to North Dakota. Rather, the dispute in the instant case involves the proper determination of system value and the use of different percentages of assessed value to compute taxable value for different categories of taxpayers.

The historical approach used in determining system value is to average several different indicators of value. Underlying this approach is the theory that the property has a value attributable to its use in railroad operation and that a willing buyer will continue that use. It is not an attempt to determine actual price but to determine selling price if there were in fact a willing buyer and a willing seller. The Board has traditionally accomplished this by taking a simple average of the following three fac-

tors: (1) the net depreciated cost of railroad operating property reduced by an obsolescence deduction; (2) net capitalized operating income; and (3) net stock and debt valuation. The Soo Line contends that the Board used a grossly erroneous and inadequate capitalization rate as well as an inadequate and arbitrary obsolescence adjustment, both of which led to grossly excessive valuations for each of the three years in question.

One of the first things we must determine in this case is the proper standard of review. The district court utilized a standard of review applied in the case of *Northern Pac. Ry. Co. v. State*, 71 N.D. 93, 299 N.W. 696, 700 (1941), wherein this Court said:

"... a determination of the Board is binding upon the courts unless it is shown clearly that the determination was made fraudulently, or in such wrongful, arbitrary or capricious manner as to constitute in effect fraud in law or an act in excess of jurisdiction."

The district court determined that the *Northern Pacific* case was controlling. We disagree.

The *Northern Pacific* case was decided on July 10, 1941. It was, however, an application of the law in effect for the *Northern Pacific* tax assessments for the year of 1939. The 1941 Legislative Assembly enacted the Administrative Agencies Practice Act.[3] Section 28–32–22, N.D.C.C., provided that the effective date of that Act would be July 1, 1941, and that its procedure should be applied to all claims and proceedings filed in or commenced by an administrative agency subsequent to that date. Accordingly, *Northern Pacific* is no longer applicable.

It is our opinion that the State Board of Equalization is an administrative agency as defined by § 28–32–01(1), N.D.C.C. which provides as follows:

"1. 'Administrative agency' or 'the agency' includes any officer, board, commission, bureau, department or tribunal other than a court, having state-wide jurisdiction and authority to make any order, finding, determination, award, or assessment which has the force and effect of law and which by statute is subject to review in the courts of this state."

We find that the Board of Equalization fits squarely within this definition: first, it is a board having statewide jurisdiction and authority; second, its assessments have the force and effect of law; and, third, § 57–08–01, N.D.C.C., makes the Board's judgments subject to review in the courts of this State. In the recent case of *Knoefler Honey Farms v. Just*, 270 N.W.2d 354 (N.D. 1978), this Court said that an agency must meet all of the requirements of § 28–32–01(1), N.D.C.C., in order to be considered an administrative agency. The Board of Equalization meets all of the requirements of § 28–32–01(1), N.D.C.C. *In Application of Bank of Rhame*, 231 N.W.2d 801 (N.D. 1975), this Court found that the State Banking Board was an administrative agency because it met the requirements of subsection 1 of § 28–32–01, N.D.C.C.

Because we hold that the State Board of Equalization is an "administrative agency" as that term is defined by § 28–32–01(1), N.D.C.C., the proper standard of review on appeal is "preponderance of the evidence". The "preponderance of the evidence" standard is required by § 28–32–19, N.D.C.C., which provides as follows:

"*28–32–19. Scope of and procedure on appeal from determination of administrative agency.* The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall

3. Chapter 28–32, N.D.C.C.

affirm the decision of the agency unless it shall find that any of the following are present:

1. The decision or determination is not in accordance with the law.

2. The decision is in violation of the constitutional rights of the appellant.

3. Provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions and decision of the agency are not supported by its findings of fact.

If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

Section 28–32–21, N.D.C.C., provides for review of administrative decisions in this Court as follows:

"*28–32–21. Review in supreme court.* The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as provided in section 28–32–19, except that the appeal to the supreme court must be taken within sixty days after the service of the notice of entry of judgment in the district court."

We have recently discussed the "preponderance of the evidence" standard in *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D. 1979).

Because we hold that the Administrative Agencies Practice Act is applicable in this case, we remand to the Board of Equalization for a redetermination of the tax assessments of the Soo Line Railroad for the years 1974, 1975, and 1976. The Board of Equalization, upon remand, shall conduct itself consistently with the mandates of Chapter 28–32, N.D.C.C., and this opinion in making its reassessment. The issue of the applicability of the Administrative Agencies Practice Act was not raised by the parties but instead was raised by members of this Court in the interests of justice. *See Le Pire v. Workmen's Compensation Bureau*, 111 N.W.2d 355, 359 (N.D.1961); *Megarry Bros. v. City of St. Thomas*, 66 N.W.2d 704 (N.D.1954).

The three actions were brought as original actions to review the assessments pursuant to § 57–08–01, N.D.C.C. Upon remand and compliance with Chapter 28–32, the parties may express concern as to the time for appeal or review. We do not view this as a problem because the time for appeal or review would not begin to run until the Board has entered its findings of fact, conclusions of law, and order pursuant to the requirements of Chapter 28–32. The time for appeal or review will be governed by Chapter 57–08, but the standard of review will be governed by Chapter 28–32 and the decisions construing it. *See Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 218 (N.D. 1979); *Allstate Ins. Co. v. Knutson*, 278 N.W.2d 383, 387 (N.D.1979); *Application of Bank of Rhame*, 231 N.W.2d 801, 808 (N.D. 1975).

In holding that the Administrative Agencies Practice Act is applicable, we are not unmindful of § 1–02–07, N.D.C.C., which provides as follows:

"*1–02–07. Particular controls general.*—Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail."

In our opinion, Chapter 28–32 and Chapter 57–08, N.D.C.C., can be harmonized. Nothing in the "context or subject matter" of

Chapter 57–08 provides or requires a procedure incompatible with any provision in Chapter 28–32. Chapter 57–08 subjects assessments made by the Board of Equalization to a judicial review, but only by resort to Chapter 28–32 do we find that the Legislature has prescribed a procedure for that judicial review. See *Evanson v. Wigen*, 221 N.W.2d 648 (N.D.1974). No procedural rules have been adopted pursuant to § 27–02–08(2), N.D.C.C. Although §§ 57–08–01, 57–08–02, and 57–08–03, N.D.C.C., are specific statutes, the general provisions of Chapter 28–32, N.D.C.C., were enacted later and were intended by the Legislative Assembly to provide "consistency" and "fair procedural methods" for all persons affected by administrative agencies. See *Knoefler Honey Farms v. Just*, 270 N.W.2d 354, 356 (N.D.1978).

█ It is the opinion of this Court that the use of a 7 percent capitalization rate in determining the capitalized income valuation of a railroad is unrealistic and improper. The Board should attempt to apply a capitalization rate which reflects the rate of return that a reasonable investor would expect from an investment. This is something more than 7 percent when a higher rate of return can be expected from considerably safer investments.

█ Section 57–02–27, N.D.C.C., requires that all property be assessed at its "true and full value in money".[4] The use of a higher percentage of assessed value for centrally assessed property than that which is used for locally assessed property is impermissible,[5] absent legislation permitting such classification pursuant to § 176 of the North Dakota Constitution, which provides as follows:

"*Section 176.* Taxes shall be uniform upon the same class of property including franchises within the territorial limits of the authority levying the tax. The legislature may by law exempt any or all classes of personal property from taxation and within the meaning of this section, fixtures, buildings and improvements of every character, whatsoever, upon lands shall be deemed personal property. The property of the United States and of the state, county and municipal corporations and property used exclusively for schools, religious, cemetery, charitable or other public purposes shall be exempt from taxation. Except as restricted by this Article, the legislature may provide for raising revenue and fixing the situs of all property for the purpose of taxation. Provided that all taxes and exemptions in force when this amendment is adopted shall remain in force until otherwise provided by statute."

The Board has conceded that *de facto* classification of property exists in North Dakota. *1973 Proceedings of the State Board of Equalization (North Dakota), at 7.* We conclude that it is time that something be done to correct this problem of classification without authorization by statute which presently exists in North Dakota.

█ We will no longer countenance *de facto* classification of property in North Dakota for purposes of taxation. However, because of the hardship which would result, we apply this part of this ruling wholly prospectively. In holding that this opinion is to apply wholly prospectively, we are preventing the chaos which would result if local budgets for 1974, 1975, and 1976 would necessarily have to be revised. We also wish to avoid the confusion that would result in the courts when centrally assessed taxpayers, within the statute of limitations, attempted to challenge their assessments. We have at least three justifications for doing so: first, centrally assessed taxpayers can be considered barred by the doctrine of laches for not making an earlier challenge to *de facto* classification; second, to allow

---

4. Problems created by assessment of property at the "true and full value in money" can be corrected by a corresponding reduction in the mill levy.

5. This problem was considered by the 1979 Legislative Assembly but no legislation implementing § 176 of the North Dakota Constitution with reference to the classification of property was enacted at the 1979 Session.

the Legislative Assembly time to provide for statutory classification of property under the Constitution; and, third, to give the State Board of Equalization time to comply with the decision in this case.

Prospective rulings are no longer strangers to this Court. In *Walker v. Omdahl*, 242 N.W.2d 649, 658 (N.D.1976), we held that the increases in the amounts of unvouchered expenses paid to state officials in excess of the amount necessary to cover increases in the cost of living were unconstitutional. We applied that ruling wholly prospectively, making it operative at the end of the term for which each incumbent state official was elected.

In *Kitto v. Minot Park District*, 224 N.W.2d 795, 804 (N.D.1974), and in *Johnson v. Hasset*, 217 N.W.2d 771, 780 (N.D.1974), we applied the ruling to each case and prospectively. In *Kitto, supra*, we abolished the doctrine of governmental immunity as distinguished from sovereign immunity and we applied the decision to the case and prospectively to causes of action arising fifteen days after adjournment of the subsequent Legislative Assembly. In *Johnson, supra*, we held the guest statute unconstitutional. We there applied the decision to the case and to all claims for relief accruing on and after the date of the original decision.

Prospective overruling is discussed at 71 Yale Law Journal 907 (1962). It is pointed out in 71 Yale Law Journal, *supra* at 932, that one of the advantages of prospective overruling is that "it will encourage courts to change the law in situations where the consequences of retroactivity would otherwise discourage such change". Justice Cardozo was an advocate of prospective application of judicial rulings and his opinion, known as the "Sunburst Doctrine", in *Great Northern Ry. Co. v. Sunburst Oil and Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), is an interesting and eloquent discussion of the merits of prospective overruling.

■ Our holding is that all tax assessments, beginning with the 1980 computations, must be uniform in North Dakota until such time as the Legislature provides for classification of different levels of property for purposes of taxation. *Amicus curiae* herein has urged that we require all property be assessed at 100 percent of its true and full value. We do not address this requirement because it was neither raised nor addressed by the parties.

For reasons stated in this opinion, the State Board of Equalization is found to be an administrative agency under Chapter 28–32, N.D.C.C., the judgment of the district court in these three consolidated cases is reversed, and the cases are remanded to the State Board of Equalization for proceedings not inconsistent with this opinion.

ERICKSTAD, C. J., and PEDERSON and VANDE WALLE, JJ., concur.

SAND, Justice (specially concurring and dissenting in part).

I concur in most of the majority opinion, except as hereinafter stated and explained.

I am fully aware that decisions of the court generally have both retroactive application as applied to the facts of the case giving rise to the decision and prospective application as to the rule of law announced and as it may apply to others. It really would be an unusual situation if a decision did not apply to the facts performed or accomplished and in that respect the decision is retroactive as applied to those facts. With this I have no problem. I also recognize that a rule of law, purely the product of the court, as distinguished from the interpretation or construction of a statute or constitutional·provision which if later overruled may be given a delayed effective date. I have reservations in making a ruling effective some time in the future and am reluctant to support and promote such a concept.

The often referred to "Sunburst Doctrine" was primarily concerned whether or not an estimate rate for rate purposes can later be substituted with an actual rate and given a retroactive application. The Montana Supreme Court held it could not be legally done on the basis that the rates established by the Railroad Commission are

presumed to be reasonable. On appeal, the United States Supreme Court affirmed. The so-called delayed effective date was not at issue. The United States Supreme Court in *Great Northern Railway Company v. Sunburst Oil & Refining Company*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), said:

"We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly [citations omitted] that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted. [Citations omitted.] On the other hand, it may hold to the ancient dogma that the law declared by its courts had a Platonic or ideal existence before the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning." 287 U.S. 358, 364–65, 53 S.Ct. 145, 148–49, 77 L.Ed. 360, 366.

To obtain the full significance of the court's ruling it is necessary to examine also the case entitled *Sunburst Oil & Refining Co. v. Great Northern Ry. Co.*, 91 Mont. 216, 7 P.2d 927 (1932).

The court in the case at hand is not announcing a new principle of law. The rule of law announced here arises out of the constitutional and statutory provisions which have been on the books and have been discussed by legislators and other public officials for many years. The concepts involved are not novel, but have been expressed by many public officials, if not advocated. The statutory and constitutional provisions are clear in this respect. It is simply a matter of a governmental body not following the concepts stated in the statutory and constitutional provisions.

Be that as it may, the assessments involved here were made on an annual basis. Section 179, N.D.Const. and § 52–05–01, NDCC. Each annual assessment can be likened to a cycle. Unless an appeal or review is demanded within a certain time the assessments are the equivalent of "res judicata."

The basic opinion, as I understand it, concludes that "de facto classification" will no longer be countenanced and assessments must be uniform beginning with 1980 computations until such time as the legislature provides for classification of different levels of property for purposes of taxation. The ruling of the court was delayed until 1980. The reason given in the majority opinion in support of the delayed effective date is that the ruling then would apply to all tax assessment cases. I do not believe this ruling furthers the ends of justice, because the same result would be reached if there were no delay of the effective date on the basis that no further assessments, except the one in the case at hand, would be made until 1980 in any event. The budgets have all been made for the years past and the only case that would come before the Board again are those in which an appeal or a review has been taken.

The appellant won on the points of law but by court rule is denied the relief to which it is entitled. I would have the ruling applied across the board knowing that the only one that could take advantage of it now would be the appellant.

PAULSON, Justice (on petition for rehearing).

The State Board of Equalization has asked this court to reconsider two aspects of our December 5, 1979, opinion in the instant case. First, the Board argues that the State Board of Equalization is not an administrative agency as defined by § 28–32–01(1), N.D.C.C., because its actions are not subject to review in the courts of this State. We disagree.

■ As we indicated in the opinion, Chapter 57–08, N.D.C.C., makes the actions of the Board subject to review in the courts

of this State. Again, the Board relies heavily on the *Northern Pacific* decision, 71 N.D. 93, 299 N.W. 696 (N.D.1941), which is not controlling on the issue of whether or not the Board is an administrative agency. The *Northern Pacific* case was decided on July 10, 1941. It was, however, an application of the law in effect for the *Northern Pacific* tax assessments for the year of 1939. The 1941 Legislative Assembly enacted the Administrative Agencies Practice Act. Section 28–32–22, N.D.C.C., provided that the effective date of that Act would be July 1, 1941, and that its procedure should be applied to all claims and proceedings filed in or commenced by an administrative agency subsequent to that date. Accordingly, *Northern Pacific* is no longer applicable.

 Secondly, the Board asks us to reconsider that part of our holding requiring assessments to be uniform for purposes of taxation beginning with the 1980 assessments. The Board does not argue with the rationale of that decision, but asks only that we postpone the time when all tax assessments must be uniform until the Legislature has had full opportunity to consider the matter.

The Board makes several assertions, i. e., (1) that the court's holding will require reassessment in 1980 of real estate in those cities and counties that do not assess real estate annually; (2) that the administrative burden of having to reassess locally assessed property and the cost of notifying owners of locally assessed property of the value of their property as reassessed; (3) of the possible disruption it would cause in the medical school mill levy; and (4) that the task of making a complete reassessment of property in the State would be unduly burdensome because for locally assessed property the annual assessment date would be February first for the 1980 assessments. Some of these assertions are more pertinent than others. We conclude that to avoid as much confusion as possible and to permit a more deliberative process, we should postpone the effective date of the opinion.

Accordingly, we hold that all assessments of property in North Dakota for purposes of taxation must be uniform beginning with the 1981 property tax assessments, unless the Legislature provides for classification of property for purposes of assessment.

ERICKSTAD, C. J., and VANDE WALLE, J., concur.

SAND, Justice.

I adhere to my former opinion.

PEDERSON, Justice.

I do not agree with the changes made by the majority.