A.L. ULVEDAL and Betty
Ulvedal, Appellees,

v.

BOARD OF COUNTY COMMISSION-
ERS OF GRAND FORKS COUNTY,
North Dakota, Appellant.

Civ. No. 880113.

Supreme Court of North Dakota.

Jan. 9, 1989.

Caldis, Arneson & Tingum, Ltd., Grand
Forks, for appellees; argued by Kirk A.
Tingum.

Howard D. Swanson (argued), Sp. Asst. States Atty., Grand Forks, for appellant.

James T. Odegard, State's Atty., Grand Forks, for appellant. No appearance.

MESCHKE, Justice.

We hold that a board of county commissioners did not abuse its power in refusing to reduce the tax assessment on real estate owned by A.L. and Betty Ulvedal. Therefore, we reverse the decision of the district court and reinstate the decision of the Board.

Ulvedals owned an office building, converted from a hospital, in the City of Grand Forks. In 1985 the Grand Forks city assessor valued the building at $738,690 for tax purposes. Ulvedals sought abatement of 1985 taxes, alleging that the assessment was "excessive, inequitable, and unjust."

The Grand Forks City Council, upon recommendation of its Finance Committee and after a public hearing, recommended that the Board of County Commissioners deny Ulvedals' abatement. The Board considered the abatement at three meetings. Ulvedals presented a report of experts appraising the building's value at $400,000. At the Board's final meeting on the abatement, the assessor criticized the experts' appraisal, particularly because it did not calculate depreciation on a reported replacement cost of $1,923,000. The assessor reiterated his "cost-approach-method" valuation of $738,690, submitted "income-approach" calculations for a value of $684,100, and compared this building to seven other assessed properties on a square foot basis. By a divided vote, the Board denied Ulvedals' abatement.

Ulvedals appealed to the district court. On a stipulated record, the district court ruled that "the Board acted in an unreasonable and arbitrary fashion" in denying the abatement and concluded that the city assessor's value "was inflated, inaccurate and compiled contrary to the applicable statutory provisions." The district court valued the building at $400,000 and, strangely, ordered "straight line depreciation," perhaps intended for calculating assessments after 1985. The Board appealed, arguing that it did not act arbitrarily in upholding the assessment on the building.

## SCOPE OF REVIEW

■ The legislature has authorized a board of county commissioners to abate an assessment upon real property when it is "invalid, inequitable, or unjust." NDCC 57–23–04(1)(h). An appeal to the courts from a decision of a board of county commissioners is authorized by law. NDCC 11–11–41.[1] NDCC 11–11–43 says:

"*Appeals docketed and tried de novo.* All appeals taken from decisions of a board of county commissioners shall be docketed as other causes pending in the district court and shall be heard and determined de novo."

In its decision here, the district court appears to have misapplied that stated scope of review, giving too literal an effect to "de novo." At one time, the meaning of "de novo" review permitted independent findings of fact by the reviewing court. *See* 5 Am.Jur.2d *Appeal and Error* § 703 (1967). But, this statutory "de novo" review of decisions by county commissioners does not fit the old notion of "de novo" review; it is much more limited.

Several decades ago, this court addressed the proper role of courts in reviewing a tax assessment by a local governing body. *Appeal of Johnson,* 173 N.W.2d 475 (N.D.1970). In that earlier appeal, also from an assessment of real estate in Grand Forks, this court surveyed how courts in other states approached review of assessments of property for tax purposes. We concluded that "it is not for the court to substitute its judgment for that of the lawfully designated taxing authorities, ..." *Id.* at 484. When "there is substantial evi-

---

1. In 1973, the legislature created a Tax Appeals Board with power to initially review tax assessments on appeal from abatement applications to county commissioners. This intervening review step was held unconstitutional in *Paluck v. Bd. of Cty. Com'rs, Stark County,* 307 N.W.2d 852 (N.D.1981). The procedure has returned to the previous way of appeal directly to the district court from the county commissioners' decision.

dence to support the appraisal made by the assessing authorities and no evidence of any discrimination," *id.* at 484, a decision of county commissioners should be upheld.

Later, in *Shaw v. Burleigh County*, 286 N.W.2d 792 (N.D.1979), this court carefully defined the scope of "de novo" review of a county commissioner's decision under NDCC 11–11–43. A decision about zoning was under review. This court recognized that it was examining the exercise of "a legislative function and not a judicial one." *Id.* at 795. For separation of powers reasons, we held:

> "... that a 'de novo' hearing, as applied to judicial review of decisions of the Board of County Commissioners under Section 11–11–43, N.D.C.C., means a trial to determine whether or not the Board acted arbitrarily, capriciously, or unreasonably. Section 11–11–43, N.D.C.C., must be treated as merely providing the procedure by which the proceeding may be brought before the court to determine whether or not the Board acted properly." 286 N.W.2d at 797.

Thus, a reviewing court may not reverse a local governing body's action simply because it finds some of the material considered more convincing. Only when there is such an absence of evidence or reason as to amount to arbitrary, capricious or unreasonable action, can a reviewing court reverse. Both the district court and this court are limited to this scope of review. *Shaw, supra* at 797.

This limited review, carefully explained in *Shaw*, had been anticipated in *Johnson:*

> "[T]he taxation of property is a legislative rather than a judicial function, ... '[t]he court must presume, in the absence of contrary evidence, that the assessing officers performed their duty, and the court will not set aside an assessment merely because of a difference of opinion as to value. (Citations omitted)'" 173 N.W.2d at 481–482.

We have continued to employ this restricted concept in reviewing decisions by local governing bodies. Thus, in *Haman v. City of Surrey*, 418 N.W.2d 605 (N.D. 1988), we affirmed that a city's special assessment commission had not acted arbitrarily, oppressively or unreasonably in assessing benefits from water and sewer improvements. *See also Cloverdale Foods Company v. City of Mandan*, 364 N.W.2d 56 (N.D.1985).[2]

---

2. In 1985, following a report from a subcommittee chaired by Dean W. Jeremy Davis of the University of North Dakota Law School, our Court Services Administration Committee recommended that this court amend Rule 9.1 of the North Dakota Rules of Court to set up uniform procedures for court review of the decisions of "agencies" not included in the Administrative Agencies Practice Act. NDCC 28–32. These amendments chiefly addressed appeals from decisions of local governing bodies like county commissioners. Although the amendments no doubt would have improved review procedures, they did not address the constitutional difficulty inherent in "de novo" review of local legislative actions. For separation of powers reasons, we declined to adopt the amendments and suggested that the committee seek a legislative study.

The Interim Judiciary Committee of the Legislative Council began considering the matter in 1988. *See* NORTH DAKOTA LEGISLATIVE COUNCIL MINUTES OF THE JUDICIARY COMMITTEE, STUDY OF PROCEDURES FOR APPEALS FROM DECISIONS OF LOCAL GOVERNING BODIES, pp. 14–18, (April 5, 1988). A number of witnesses, including a member of this court, testified that the current reference to "de novo" review was confusing and frustrating to both local governing boards and attorneys.

The Interim Judiciary Committee recommended a measure to the Legislative Council which has been approved for consideration during the 1989 legislative session. The legislative proposal would amend NDCC 11–11–41 and 11–11–43, as well as other sections of the North Dakota Century Code, to do away with "de novo" review. Legislative action to reform the procedure by striking the "de novo" reference would be a welcome way to deal with both constitutional concerns and need for uniformity.

Largely following the design of the recommendation by our Court Services Administration Committee, the recommended bill would also afford ample opportunity to develop an appropriate record for review of a decision by a local governing body. Since a local government generally keeps only minutes of its final action and does not maintain a complete record of everything before it, this would also be an important improvement. This related problem was obviated in this case by stipulation of the record by the parties, which is one of the ways recognized and encouraged by the pending legislative proposal.

Therefore, we consider whether the Grand Forks County Commissioners acted arbitrarily in not abating the tax assessment on the Ulvedals' office building.

### ARBITRARINESS

■ Ulvedals' attack on the assessment naturally stressed weaknesses of the city assessor's approach and strengths of their experts' appraisal. Ulvedals summarized it as "more than a difference of opinion;" rather, "a difference of fact."

There were no specific findings or expressed reasons for the Board's decision other than the uninformative recital, "as recommended by the Governing Board [City council]." Pointing to that absence, Ulvedals argued that the city assessor's valuation was not "substantial evidence" for the assessment. Ulvedals urged the district court's conclusion that "the assessor's report was inherently flawed and biased." The district court also commented that the "crucial[ ] distinction" between this case and our prior decision in *Johnson* "rests on the quality and quantity of evidence supporting the appraisal...." Thus, it is plain that the district court weighed the valuation evidence anew. That was improper.

It is true that Ulvedals submitted a well supported appraisal by well qualified experts, opining a value of $400,000 for the property. It is also true that the city assessor's criticisms of the experts' appraisal were unimpressive. But, we cannot view those criticisms as entirely unjustified, as Ulvedals urge. The experts' appraisal was based primarily on a "market data approach" and an "income approach," and did not use a "replacement cost approach." [3] Although the experts concluded that an "indicated reproduction cost new of the entire property" was $1,925,000, they attached no opinion of current value to that finding "[b]ecause of the subjectivity of

estimating the accrued depreciation without sufficient data." There is an element of subjectivity in every opinion about value.

The city assessor started with an estimated "replacement" cost of $1,100,000, compared to the experts' reported "reproduction" cost of $1,925,000. The experts declined to refine their cost figure by applying depreciation factors and adjustments. On the other hand, the city assessor adjusted for depreciation of over $481,-000, as well as for incomplete improvements, recent improvements and land values to reach his "cost approach" valuation of $738,690. At the hearing before the Board, the city assessor further supported his valuation by an "income approach" analysis (which Ulvedals' criticized as employing inaccurate revenue and expense estimates compared to that of their experts). The city assessor also submitted an analysis of the assessed value of the property on a square foot basis compared with seven other buildings which placed its $16.44 per square foot assessment somewhere between a $24.10 high and a $9.60 low for other office buildings.

■ The city assessor's opinion about value was not overpowering, particularly when compared with the appraisal by taxpayers' experts. But the limited scope of judicial review does not permit the courts to weigh the material on value to determine which part of it is more convincing. Weighing factual material for tax purposes is the responsibility of county commissioners, not the courts. Since we cannot say that the city assessor's figures were unreasonable, we cannot say that the Board's decision to confirm that valuation for the assessment was arbitrary, capricious or unreasonable. The Board's decision was based on reasonable evidence before it.

■ But Ulvedals' attack on the assessor's "cost approach" outcome went fur-

---

**3.** "There are three basic approaches to the valuation of property ...:

"(1) comparable sales, sometimes referred to as the market or market value or market data approach;

"(2) The cost (or original-cost or reproduction cost-less-depreciation) approach; and

"(3) The income (or economic) approach." (Footnote omitted). 7 Nichols On Eminent Domain § 4.04[3] "The Appraisal Report" (1987).

ther. They argued that use of replacement cost was a misapplication of the law. It is part of our scope of review "to determine whether or not the Board's action comports with a correct interpretation of the law...." *Conway v. Board of County Commissioners*, 349 N.W.2d 398, 400 (N.D. 1984).

Ulvedals pointed to the current definition of "true and full value" in the chapter of the North Dakota Century Code on real estate taxation. NDCC 57–02–01(15) has been amended to read: [4]

"'True and full value' means the value determined by considering the earning or productive capacity, if any, the market value, if any, and all other matters that affect the actual value of the property to be assessed. This shall include, for purposes of arriving at the true and full value of property used for agricultural purposes, farm rentals, soil capability, soil productivity, and soils analysis."

Taxpayers observed that this new definition specifically mentions "earning or productive [income] capacity, if any, [and] the market value, if any," but does not specify the cost of reproduction as a factor. Ulvedals pointed out, as did the district court, that this "statutory change in the definition of true and fair value [took place] in the 22 years since the *Johnson* case arose." Recognizing that the statute also allows consideration of "all other matters that affect the actual value of the property," Ulvedals agreed that "reproduction cost may be one consideration[ ]," but argued vigorously that it cannot be the only consideration. In effect, Ulvedals argued that the original assessment cannot stand because it was based only on "replacement cost."

The district court concluded that the "revised statute sets a much broader base of relevant factors that are to be considered in valuation of property, factors ... taken into consideration by the independent appraisers, but *not* by the City Assessor in his strict cost approach analysis." We disagree that the statutory change compels a different assessment.

As amended, the statute does not confine determination of value to any single consideration. There is no statutory reason why taxing authorities cannot employ replacement and reproduction cost methods. The statute allows consideration of "all other matters that affect the actual value of the property to be assessed." NDCC 57–02–01(15). With appropriate adjustments for age and condition, replacement analysis can be an appropriate method to value improvements and structures. Taxing authorities are not tied down to earnings or transactions as select measures of value, although they are obvious references for appraising unimproved real estate.

■ Nor can we conclude that the Board arbitrarily used only a reproduction value in considering this abatement. In addition to material on "cost," the Board had before it the market and income data in the appraisal by Ulvedals' experts, as well as the city assessor's additional calculations on an "income approach" and his comparison on an assessed square foot basis. Thus, the Board considered a range of material about value. We can understand the taxpayers disappointment, but we are not convinced that the Board abused its authority by acting arbitrarily and unreasonably.

Applying the correct standard of review, we hold that the Board did not abuse its

4. The legislature has several times restated the meaning of "true and full value." When the dispute in *Appeal of Johnson, supra,* arose in 1966, NDCC 57–02–01(4) read:

"'True and full value' means the usual selling price at the place where the property to which the term is applied shall be at the time of the assessment, that being the price at which it could be obtained at private sale, and not at a forced public auction sale."

In 1969, this was amended to read:

"'True and full value' means the usual selling price at the place where the property to which

the term is applied shall be at the time of the assessment, that being the price at which it could be obtained at private sale, and not at a forced public auction sale. In arriving at the true and full value, consideration may be given to the earning or productive capacity, if any, the market value, if any, and all other matters that affect the actual value of the property to be assessed[.]" 1969 N.D.Sess. Laws, ch. 469, p. 1005.

In 1979, this was again amended to the version quoted in the text of our opinion. *See* 1979 N.D.Sess.Laws, ch. 586, p. 1476.

power. Therefore, we reverse the district court and reinstate the Board's decision.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.