TROLLWOOD VILLAGE LIMITED PARTNERSHIP, Trollwood Square Limited Partnership, Trollwood Apartments Limited Partnership, and Trollwood Land Limited Partnership, Appellants,

v.

CASS COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee.

Civil No. 960162.

Supreme Court of North Dakota.

Dec. 20, 1996.

Rehearing Denied Jan. 22, 1997.

Winthrop A. Rockwell, of Faegre & Benson, Minneapolis, MN, and Paul F. Richard, of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for appellants.

Robert G. Hoy, Special Assistant State's Attorney, of Ohnstad Twichell, West Fargo, and John T. Goff, State's Attorney, Fargo, for appellee.

SANDSTROM, Justice.

Trollwood Village Limited Partnership, Trollwood Square Limited Partnership, Trollwood Apartments Limited Partnership, and Trollwood Land Limited Partnership (Trollwood) appealed from an order affirming the Cass County Board of Commissioners' denial of Trollwood's application for abatement of real estate taxes for 1988 through 1994. We hold, except to correct a jurisdictional defect in the 1989 assessment, Trollwood's application for abatement for 1988 through 1991 is barred by N.D.C.C. § 57–23–04(1), and the Board's valuation for 1992 through 1994 is not arbitrary, capricious, or unreasonable. We remand to the Board to correct the 1989 assessment, and, as corrected, we affirm.

I

On March 31, 1987, Trollwood and the City of Fargo executed a tax increment financing agreement under N.D.C.C. § 40–58–20(11) to facilitate Trollwood's redevelopment of a shopping mall in north Fargo into a commercial facility and four apartment buildings with a central parking garage. Trollwood agreed the redeveloped property would have a market value of approximately $7 million when completed in December 1990, and Fargo agreed to provide tax increment financing in the form of a $500,000 tax exemption. The agreement provided for amortization of the $500,000 tax exemption by computing an incremental value based upon the difference between the taxable value of the property for the base year 1987 and for each subsequent year and applying the mill rate to the incremental value to determine an annual "tax increment." Fargo established a "frozen appraised value" of $1,766,700 for the property. Since 1988, Trollwood has paid taxes on the "frozen appraised value," and the $500,000 tax exemption has been reduced by the tax attributable to the difference between the "frozen appraised value" and the true and full value. The entire $500,000 tax exemption was depleted by 1995.

In October 1994, Trollwood applied for an abatement of taxes for 1988 through 1994, contending the assessments of the property for those years unduly expedited the depletion of the $500,000 tax exemption. Trollwood's application summarized the parties'

positions on the "true and full value" of the property:

| YEAR | TROLLWOOD | ASSESSOR |
|------|-----------|----------|
| 1988 | $3,460,000 | $5,175,027 |
| 1989 | 3,460,000 | 7,204,100 |
| 1990 | 3,460,000 | 6,176,400 |
| 1991 | 3,710,000 | 6,176,400 |
| 1992 | 3,820,000 | 6,176,400 |
| 1993 | 3,950,000 | 5,545,000 |
| 1994 | 3,830,000 | 5,545,000 |

The Cass County Board of Commissioners denied Trollwood's application for 1988 through 1991, concluding those claims were barred by N.D.C.C. § 57–23–04(1). The Board adopted the assessors' true and full value of the property for 1993 and 1994 and adjusted the assessors' 1992 true and full value from $6,176,400 to $5,545,000. The district court affirmed the Board's decision.

The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. §§ 11–11–39, 27–05–06(4), and 57–23–04(3). This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.[1] The appeal is timely under N.D.R.App.P. 4(a).

II

■ Judicial review of the Board's decision is limited to determining if the decision is arbitrary, capricious, or unreasonable. *National Sun Indus. v. Ransom County,* 474 N.W.2d 502, 506 (N.D.1991). In reviewing factual findings by the Board, we will not reverse its decision simply because we may have found other evidence more convincing; instead, we will reverse the Board's decision only if there is an absence of evidence or reason which constitutes arbitrary, capricious, or unreasonable action. *Ulvedal v. Board of County Comm'rs,* 434 N.W.2d 707, 709 (N.D.1989). The Board's interpretation of a statute, however, is fully reviewable, and the Board's failure to correctly interpret and apply controlling law is arbitrary, capricious, and unreasonable. *Gullickson v. Stark County Comm'rs,* 474 N.W.2d 890, 892 (N.D. 1991).

III

Trollwood contends the Board erred in refusing to consider the application for abatement for 1988 through 1991 because Trollwood did not receive written notice of increased assessments for those years. Trollwood also contends the Board erred in concluding the application for those years was barred by N.D.C.C. § 57–23–04(1), which requires an application to be "filed in the office of the county auditor on or before November first of the year following the year in which the tax becomes delinquent." Trollwood argues its application was not barred because the $500,000 tax exemption was amortized over the disputed years and there was no actual shortfall of taxes paid in those years.

A

Our analysis requires a brief description of the statutory framework for tax assessments and tax increment financing. All real property subject to taxation must be assessed every year with reference to its value on the first of February. N.D.C.C. § 57–02–11. Before the first of April, an assessor shall assess each tract or lot of real property listed for taxation to determine its "true and full value" and its "assessed value." N.D.C.C. §§ 57–02–27.1 and 57–02–34.

True and full value means "the value determined by considering the earning or productive capacity, if any, the market value, if any, and all other matters that affect the actual value of the property to be assessed." N.D.C.C. § 57–02–01(15). Assessed valuation means "fifty percent of the true and full value." N.D.C.C. § 57–02–01(3). Under N.D.C.C. § 57–02–27, all taxable property is valued at a set percent of its "assessed value," which results in an amount "known as the taxable valuation." Section 57–02–01(13), N.D.C.C., also defines "taxable valuation" as "the valuation remaining after deducting exemptions and making other reductions from the original assessed valuation, and is the valuation upon which the rate of levy finally

1. Although the record does not include a formal judgment consistent with the district court's order, the court's decision demonstrates it was intended to be the court's final order. *See American Ins. Co. v. Midwest Motor Express, Inc.,* 554 N.W.2d 182, 183 n. 1 (N.D.1996).

is computed and against which the taxes finally are extended."

N.D.C.C. Chapters 57–09, 57–11, 57–12, and 57–13 describe procedures for tax equalization of the assessments. Section 57–23–02, N.D.C.C., requires county auditors to publish notice in March that local equalization boards will conduct proceedings for equalization of assessments in April. For property located in a city, the city board of equalization meets in April to equalize city assessments, and the city auditor thereafter forwards the city's assessments to the appropriate county auditor. N.D.C.C. §§ 57–11–01 through 57–11–03. The county board of equalization meets in June to equalize assessments by the respective city and township boards of equalization within each county. N.D.C.C. § 57–12–01. The owner of any property assessed by a county may appeal the assessment to the state board of equalization, which meets in August to equalize assessments throughout the state. N.D.C.C. §§ 57–12–06(3), 57–13–03, and 57–13–04.

Under N.D.C.C. § 57–20–07.1, by December twenty-sixth of each year, the county treasurer shall mail a real estate tax statement to the owner of each parcel of real property. The statement must show the true and full value of the property and the total mill levy. The failure of a property owner to receive a tax statement, however, does not abrogate the owner's tax liability. N.D.C.C. § 57–20–07.1.

Here, Trollwood's property received the benefit of tax increment financing under N.D.C.C. § 40–58–20(11),[2] which authorizes a municipality to grant property tax exemptions for qualifying developments or renewal areas. Under N.D.C.C. § 40–58–20(11), the amount of the annual tax exemption is limited to a "tax increment," which is determined by computing a yearly incremental value, the difference between the property's original taxable value and the taxable value for the respective tax year, and applying the mill rate to the incremental value. N.D.C.C. § 40–58–20(2), (3), and (4). Each year's "tax increment" is subtracted from the allowed tax exemption until the entire exemption is depleted; however, the duration of the exemption may not exceed fifteen years.

### B

■ If an assessor increases the "assessed valuation" of any lot or tract of land by fifteen percent or more from the previous assessment, the assessor, at least ten days before the meeting of the local equalization board, must deliver or mail to the property owner written notice of the amount of the increase and the amount of the last assessment. N.D.C.C. § 57–12–09.[3] The notice

2. Section 40–58–20(11), N.D.C.C., provides:

"11. As an alternative to the sale of bonds to be amortized with tax increments as provided in this section, the governing body of a municipality may, in its discretion, grant a total or partial tax exemption for the project in order to provide assistance to a project developer in a development or renewal area, pursuant to agreement with the municipality.... The amount of annual tax exemption under this subsection is limited to the tax increment as defined in this section as it applies to the development or renewal project and may extend for a period not to exceed fifteen years. In determining the total amount of the tax exemption to be authorized, the municipality shall give due consideration to the same elements as are involved in the sale of bonds to be amortized by tax increments.... The amount of tax exemption must be an amount sufficient to reimburse the project operator for those eligible costs, amortized pursuant to the agreement between the project developer and the municipality."

3. Section 57–12–09, N.D.C.C., says:

"*Written notice of increased assessment to real estate owner.* When any assessor has increased the assessed valuation of any lot or tract of land together with any improvements thereon by fifteen percent or more of the last assessment, written notice of the amount of increase over the last assessment and the amount of the last assessment must be delivered by such assessor to the property owner or mailed to him at his last known address except that no such notice need be delivered or mailed if the assessment is increased by less than one thousand five hundred dollars. The tax commissioner shall prescribe suitable forms for this notice and such notice must also show the true and full value as defined by law of the property, including such improvements, that the assessor used in making the assessment for the current year and for the year in which the last assessment was made and must also show the date prescribed by law for the meeting of the local equalization board of the assessment district in which the property is located and the meeting date of the county equalization board. Such notice must be

also must state the true and full value of the property and the meeting dates for the local and county boards of equalization.

In *Fisher v. Golden Valley Bd. of County Comm'rs*, 226 N.W.2d 636, 647 (N.D.1975), this Court held the notice requirement of an earlier version of N.D.C.C. § 57–12–09 was jurisdictional, and if property owners were not provided with the written notice required by the statute, any increase in the assessed valuation exceeding fifteen percent of the previous "assessed valuation" was invalid.[4] This Court's decision in *Fisher* at 647–48 invalidated the tax attributable to more than a fifteen percent increase in the previous year's assessed valuation.

Here, counsel for the Board concedes Trollwood was not given written notice under N.D.C.C. § 57–12–09. The tax increment financing statutes do not exempt the written notice requirement of N.D.C.C. § 57–12–09 from assessments for property subject to tax increment financing. Under *Fisher* at 647–48, the notice requirement of N.D.C.C. § 57–12–09 is jurisdictional, and any tax attributable to a fifteen percent or more increase from the previous year's "assessed valuation" is invalid.

■ Although the parties have referred to a "frozen appraised value" of $1,766,700 for the property, this record does not include a 1987 "assessed valuation," which may have triggered the written notice requirement for the 1988 assessment. In the absence of an adequate record, we decline to speculate on the 1987 "assessed valuation" of the property. The appellant, Trollwood, carries the burden on appeal of showing error. *E.g., Linrud v. Linrud,* 552 N.W.2d 342, 345 (N.D. 1996). By failing to provide a record of the 1987 assessed valuation, Trollwood has not established the 1988 assessment violated N.D.C.C. § 57–12–09.

■ In 1989, however, the assessors increased the "assessed valuation" of the property by fifteen percent or more from the 1988 assessment. Under *Fisher,* the 1989 tax attributable to a fifteen percent or more increase in the 1988 assessed valuation is invalid. We therefore direct the Board to correct the 1989 assessment. Based on our calculations, however, N.D.C.C. § 57–12–09 was not triggered for any of the other tax assessments.

### C

■ Although Trollwood has generally cited lack of notice and due process to support its argument the Board erred in refusing to consider the application for abatement for 1988 through 1991, Trollwood has cited no other statutory provisions requiring written notice of the assessments.[5]

Year-end tax statements must show the true and full value of the property, but the failure of an owner to receive the statement does not abrogate the owner's tax liability. N.D.C.C. § 57–20–07.1. Although tax increment financing is not exempt from the statutory procedures for assessing property, tax increment financing does not epitomize the ordinary relationship between a municipality and a taxpayer. Here, the parties negotiated a tax exemption for this property. Although Trollwood may not have had actual notice of the exact rate the exemption was being depleted, the parties' agreement explicitly stated the entire exemption would be amortized over a period no longer than fifteen years under N.D.C.C. § 40–58–20(11). Under these circumstances, we do not believe Trollwood can successfully claim lack of notice about the rate of depletion of the tax exemption.

mailed or delivered to the property owner at least ten days in advance of the meeting date of the local equalization board and must be mailed or delivered at the expense of the assessment district for which the assessor is employed."

4. When *Fisher* was decided, N.D.C.C. § 57–12–09 required written notice for assessments increased "by more than fifteen percent of the last assessment." The statute now requires written notice for increases "by fifteen percent or more of the last assessment." *See* 1975 N.D. Sess. Laws, Ch. 513, § 1.

5. We have often said parties making constitutional arguments should bring up the heavy artillery or forego the attack entirely. *E.g., Adams County Record v. Greater North Dakota Ass'n,* 529 N.W.2d 830, 838 n. 2 (N.D.1995).

■ We therefore analyze Trollwood's remaining argument about the 1988 through 1991 assessments under N.D.C.C. § 57–23–04(1), which requires applications for abatement to be "filed in the office of the county auditor on or before November first of the year following the year in which the tax becomes delinquent." Section 57–20–01, N.D.C.C., defines specific dates when real estate taxes "become delinquent" without reference to a shortfall in taxes actually paid. It says all real property taxes become due on the first of January following the year in which the taxes are levied and the "first installment ... become[s] delinquent after the first day of March following" and the "second installment ... become[s] delinquent after October fifteenth." When construed together to give meaning to both provisions, applications for abatement of real estate taxes must be filed before November first of the year after the tax "becomes delinquent" as defined by N.D.C.C. § 57–20–01.

Here, Trollwood's application for abatement was filed on October 28, 1994. Under N.D.C.C. § 57–20–01, Trollwood's 1992 real estate taxes became delinquent in 1993, and, to be timely, Trollwood's application for abatement of the 1992 taxes must have been filed on or before November 1, 1994, which is "the year following the year in which the tax becomes delinquent." Except for the 1989 assessment which we have disposed of on jurisdictional grounds, the Board did not misapply the law, and Trollwood's application for abatement for 1988 through 1991 is not timely under N.D.C.C. § 57–23–04(1).

## IV

. Trollwood contends the Board's decision for the 1992 through 1994 tax assessments disregards appraisal standards which are mandatory under North Dakota law. Trollwood asserts the assessors failed to consider the actual income history and earning capacity of this property as required by N.D.C.C. §§ 57–02–01(15) and 57–02–27 and by the Uniform Standards of Professional Appraisal Practice (USPAP).[6]

6. Section 43–23.3–18, N.D.C.C., was adopted in 1991 and requires all licensed and certified ap-

N.D.C.C. § 57–02–27.1 requires property assessments to be based on the "true and full value" which is defined in N.D.C.C. § 57–02–01(15) as the "value determined by considering the earning or productive capacity, if any, the market value, if any, and all other matters that affect the actual value of the property to be assessed." Our statutes, however, provide flexibility for making assessments and do not confine the determination of true and full value to any single consideration. *Ulvedal* at 711. The USPAP provisions cited by Trollwood also are flexible and do not confine the ultimate determination of value to any single consideration.

■ Here, contrary to Trollwood's assertion, the record reflects the assessors considered the income history and the earning capacity of this property, but did not give those factors the same weight as Trollwood's experts. Weighing factual evidence for tax purposes is the responsibility of the Board, not the courts. *Ulvedal* at 710. Additionally, the parties' tax increment financing agreement states the parties originally agreed the property would have a $7 million market value when it was completed in 1990. Although one of the four planned apartment buildings for the project was not built, the assessors' assessment of the true and full value of the property is not incompatible with the parties' original agreement about the market value of the property. We conclude the Board's decision is supported by the evidence. We hold the Board did not misapply the law, nor act arbitrarily, capriciously, or unreasonably in determining the true and full value of the property for 1992 through 1994.

## V

Trollwood contends the Board's decision is arbitrary, capricious, and unreasonable because the decision was based on evidence outside the record and on an erroneous presumption the Board had to support the assessors' valuations.

The Board's chairman indicated he was supporting the assessors' valuation of the

praisers to comply with USPAP.

property, because the chairman had discussed the matter with his banker and the banker's valuations supported the assessors' valuations. The evidence supports the Board's decision, and we are not persuaded the chairman's remarks were reversible error. Moreover, the comments by individual Board members supporting the assessors' valuations do not demonstrate the application of an erroneous presumption. Instead, those comments were part of the Board's deliberative process and effectively incorporated the assessors' rationale and reports as part of the Board's decision.

## VI

We remand to the Board to correct the 1989 assessment, and, as corrected, we affirm the order.

VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.