# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 204

RFM-TREI Jefferson Apartments, LLC,　　　　　　　　　Appellant

    v.

Stark County Board of Commissioners,　　　　　　　　　Appellee

### No. 20190396

RFM-TREI Lincoln Apartments, LLC,　　　　　　　　　Appellant

    v.

Stark County Board of Commissioners,　　　　　　　　　Appellee

### No. 20190397

Dickinson Homestay, LLC,　　　　　　　　　Appellant

    v.

Stark County Board of Commissioners,　　　　　　　　　Appellee

### No. 20190398

Lodgepros Dickinson, LLC,                                                    Appellant

      v.

Stark County Board of Commissioners,                             Appellee

---

No. 20190399

---

Appeals from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Michael S. Raum (argued) and Aubrey J. Fiebelkorn-Zuger (on brief), Fargo, N.D., for appellants.

Mitchell D. Armstrong (argued) and Brian D. Schmidt (on brief), Bismarck, N.D., for appellee.

**Tufte, Justice.**

[¶1] RFM-TREI Jefferson Apartments, LLC; RFM-TREI Lincoln Apartments, LLC; Dickinson Homestay, LLC; and Lodgepros Dickinson, LLC (together "the Taxpayers") appeal from district court judgments affirming the Stark County Board of Commissioners' ("the Board") denials of their applications for tax abatements or refunds. On appeal, the Taxpayers argue the Board's decisions are arbitrary and unreasonable, the Board applied an incorrect legal standard, and the Taxpayers' right to due process was violated. We reverse the judgments and the Board's decisions and remand for further proceedings.

I

[¶2]  The Taxpayers collectively own two apartment complexes and two hotels located in the City of Dickinson. The Taxpayers filed applications for abatement or refund of their 2016 property taxes. The Taxpayers' opinions of value for each property differed from the City's valuations by a range of roughly $1.8 million to $20.3 million. After holding a hearing, the City recommended the Board deny each application.

[¶3]  After briefly discussing the applications at its regular meeting, the Board decided to hold a special hearing due to the limited time available at the regular meeting. County representatives sent the Taxpayers an agenda for the special meeting. The agenda listed each abatement application in fifteen-minute time intervals. The Taxpayers' counsel raised concerns with County representatives by email and letter indicating the Taxpayers would not have enough time to present their material. County representatives were largely unresponsive and replied with a revised agenda that omitted the time designations.

[¶4]  At the special hearing, the Taxpayers' counsel began his presentation by informing the Board he had intended to call witnesses but chose not to do so

1

because he was unsure whether the Board would grant him enough time. Rather than calling witnesses, the Taxpayers' counsel submitted what he described as an "offer of proof," which contained detailed information on each property and stated:

> [W]e would anticipate eliciting expert testimony which would demonstrate that the decline in oil prices had a significant and immediate impact on the Dickinson market for commercial real estate, particularly with respect to apartments and lodging properties like the Subject Properties. This testimony would also establish that the assessment for each parcel has not declined with the market, and therefore exceeds the true and full value of each parcel.

The Taxpayers' counsel presented valuations for each property based on an income approach. The Dickinson City Assessor presented valuations based on a replacement-cost approach. The assessor informed the Board he was unable to conduct an income-approach analysis because his attempts to obtain income information from the Taxpayers were unsuccessful.

[¶5]   The Board denied the abatement applications in four separate written decisions. Using the same language in each, the Board concluded the assessor's valuations were not "in error, invalid, inequitable, unjust, or arrived at in an arbitrary, capricious, or unreasonable manner." The decisions also explained the Board did not believe the Taxpayers provided "sufficient enough information relating to the subject properties, or the local market for competing properties, to lead us to the same value conclusions requested by the applicant." The district court affirmed each denial in separate, written orders and judgments. The cases have been consolidated on appeal.

II

[¶6]   We review local governing bodies' decisions on tax rebate and abatement applications under the arbitrary, capricious, or unreasonable standard:

> Our review of a local governing body's assessment of value for tax purposes is limited by the doctrine of separation of powers.

2

> Taxation of property is a legislative function, not a judicial function, and courts may not substitute their judgment for that of the local governing body. A reviewing court may not reverse the Board's decision simply because it finds some of the evidence more convincing; rather, the reviewing court may reverse only where there is such an absence of evidence or reason that the Board's decision is arbitrary, capricious, or unreasonable. A decision of a local governing body is arbitrary, capricious, or unreasonable only if it is not the product of a rational mental process, by which the facts and the law are considered together for the purpose of achieving a reasoned and reasonable interpretation.

*Dakota Northwestern Assocs. v. Burleigh Cty. Bd. of Cty. Comm'rs*, 2000 ND 164, ¶ 8, 616 N.W.2d 349 (citations omitted). Our limited scope of review does not permit us "to weigh the material on value to determine which part of it is more convincing." *Ulvedal v. Bd. of Cty. Comm'rs of Grand Forks Cty.*, 434 N.W.2d 707, 710 (N.D. 1989). "Weighing factual material for tax purposes is the responsibility of county commissioners, not the courts." *Id.*

## A

[¶7] The Taxpayers assert the Board implied an improper standard by approaching their abatement applications as an appellate review of the assessor's valuations rather than as an independent fact finder. The Taxpayers argue that "[r]ather than consider the evidence submitted by Taxpayers, the Board was concerned about whether or not the Taxpayers had provided the City of Dickinson's Assessor with its evidence and arguments prior to the assessment."

[¶8] Although N.D.C.C. § 57-23-06 requires the Board to give the City's recommendation "consideration" in tax abatement and refund proceedings, the Board is also required to determine a property's true and full value based upon all of the evidence before it. *Dakota Northwestern Assocs.*, 2000 ND 164, ¶ 13, 616 N.W.2d 349. The Board may grant an abatement or refund when an assessment is "invalid, inequitable, or unjust." N.D.C.C. § 57-23-04(1)(h). On appeal, we "presume, in the absence of contrary evidence, that the assessing

3

officers performed their duty." *Ulvedal*, 434 N.W.2d at 709 (quoting *Appeal of Johnson*, 173 N.W.2d 475, 482 (N.D. 1970)).

[¶9] On a number of occasions during the hearing, the assessor advised the Board that his requests for income information from the Taxpayers went unanswered. This prompted discussion about what information the assessor had when he completed his valuation, which prompted more discussion about what the appropriate standard was for the Board to apply. The Stark County State's Attorney and the Taxpayers' counsel repeatedly advised the Board it was required to consider all of the evidence before it to determine whether the assessor's valuation was invalid, inequitable, or unjust.

[¶10] After the hearing, the Board issued identical, conclusory explanations for its denial of each Taxpayer's abatement application. The Board should have provided better explanations for its decisions. *Cf. Dakota Northwestern Assocs.*, 2000 ND 164, ¶ 15 n.2, 616 N.W.2d 349 (urging boards of county commissioners to provide a full explanation for the rationale behind their decisions on tax abatement applications). A review of the evidence before the Board shows the Board engaged in a determination of whether the assessor's process was reasonable without regard to whether the resulting assessment itself was invalid, inequitable, or unjust.

[¶11] During the hearing, the assessor conceded, on the basis of his 17 years of experience as an appraiser and assessor, the properties at issue would not have sold in 2016 for the assessed values.

> CHAIRMAN ELKIN: And the property, at least what you're supplying us, the one piece of property—one property sold for $30 million for Lincoln Meadows; right?
> MR. HIRSCHFELD: Yes.
> CHAIRMAN ELKIN: To the property owners and the other one, which is Jefferson Creek, sold for 6—you know, $6.45 million; right?
> MR. HIRSCHFELD: Correct.
> CHAIRMAN ELKIN: And yet it didn't cost near that to build them. You and I probably know that. But then how do you come to your

values? You're basing basically on market, or are you basing it on market cost?

MR. HIRSCHFELD: That's where that hybrid model comes into where we are capturing that entrepreneurial profit from the sales.

CHAIRMAN ELKIN: Right, and that's really what you have to base your appraisal on, that's the only thing you can go by?

MR. HIRSCHFELD: Correct.

CHAIRMAN ELKIN: Next question, how do these properties—I'd like to know, when you look at what happened with the pricing of oil, and oil prices did crash, but I don't believe the real estate market—most of us understand that did not crash until after oil crashed. So how did you determine the values when oil was crashing?

MR. HIRSCHFELD: Well, and that's that gotcha moment that they have here with, do I know that the property would sell for that. Well, having been an appraiser and assessor now for 17 years, I'm sitting there looking at all the information I have and, you know, I can't see it selling for that. However, when I go back and follow my process, you know, values always lag a year because we are looking at history.

Despite his concession, the Board adopted the assessor's determination of true and full value as reflected by the assessments.

[¶12] Every property within North Dakota, including the properties at issue, must be assessed at its "true and full value." True and full value is "the value determined by considering the earning or productive capacity, if any, the market value, if any, and all other matters that affect the actual value of the property to be assessed." N.D.C.C. § 57-02-01(15). The assessor's guidebook for North Dakota adopts the International Association of Assessing Officers' definition of "market value":

the most probable price expressed in terms of money that a property would bring if exposed for sale in the open market in an arms-length transaction between a willing seller and a willing buyer, both of whom are knowledgeable concerning all the uses to which it is adapted and for which it is capable of being used.

5

*Property Tax Guideline: Assessment Terms and Concepts*, N.D. Office of State Tax Comm'r, July 2005. For commercial properties, "[m]arket value is the same as true and full value." *Id.* "All assessments of any taxable property in excess of the full and true value in money are subject to correction and abatement and refund." N.D.C.C. § 57-23-01.

[¶13] In a typical appeal, this Court has affirmed determinations of local taxing authorities when the taxing authorities had been confronted with competing valuations provided by the assessor and the taxpayer. *E.g.*, *Dakota Northwestern Assocs.*, 2000 ND 164, ¶¶ 10-11, 616 N.W.2d 349 (affirming a Board's contested valuations when the challenges pertained to weight and credibility of the valuations); *Ulvedal*, 434 N.W.2d at 710-11 (holding a board did not abuse its power upon reviewing the assessor's contested approach to appraisal valuation); *Am. Crystal Sugar Co. v. Traill Cty. Bd. Of Comm'rs*, 2006 ND 118, ¶¶ 14-15, 714 N.W.2d 851 (holding it is not for this Court to micro-manage valuations of assessments when the valuations are contested amongst the parties). We have never affirmed a local taxing authority's decision to knowingly adopt an assessment greater than the true and full value of the property, and we decline to do so here. Our prior cases simply affirmed a taxing authority's choice between two conflicting opinions regarding the true and full value.

[¶14] Despite the assessor's concession that the assessed value exceeded the market value of the properties, the Board adopted the assessments. It is inequitable and unjust to assess property in excess of the true and full value. Whether the requests for abatement should have been granted can be answered with a single question statutorily required to be answered by the Board: *were the assessments in excess of the true and full value?* N.D.C.C. § 57-23-01. The answer to the question is yes. The only evidence before the Board was that the 2016 assessments exceeded the true and full value of the properties. The assessor conceded the properties could not have sold in 2016 for the value they were assessed; their market value was less than their assessed value. Because they are commercial properties, market value is synonymous with true and full value. *Property Tax Guideline: Assessment*

6

*Terms and Concepts*, N.D. Office of State Tax Comm'r, July 2005. The Board adopted assessments that the assessor conceded were greater than the true and full value of the properties. Accepting assessments that exceed the true and full value of property and denying requests for abatement is contrary to N.D.C.C. § 57-23-01, which provides that "assessments of any taxable property in excess of the full and true value in money are subject to correction and abatement and refund." When a Board acts contrary to a legislature's directive, those acts must be determined to be arbitrary and unreasonable.

B

[¶15] The Taxpayers also argue the Board denied them due process because it did not meaningfully respond to their requests concerning the hearing format and time limitations. Although they acknowledge the Board "never specifically forbade any witness from testifying," they claim the Board "effectively denied that opportunity." Because this may recur on remand, we briefly address this argument.

[¶16] The standard for due process in the context of tax abatement proceedings is different from the process required in judicial proceedings:

> This Court has long held that the taxation of property is a legislative rather than a judicial function. Because a board of county commissioners is not a judicial tribunal, due process does not require a judicial trial, and the character of the hearing is not measured by standards of judicial procedure. . . .
>
> The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Whether a party has been deprived of due process by an action of a nonjudicial body depends on whether it acted contrary to the statutes and rules and with arbitrary and unreasonable discrimination.

*Am. Crystal Sugar Co.*, 2006 ND 118, ¶¶ 7-8, 714 N.W.2d 851 (citations and internal quotation marks omitted).

7

[¶17] The County's responses to the Taxpayers' inquiries regarding the hearing rules and time limitations were unclear and inconsistent. In response to the Taxpayers' requests for clarification, one County representative advised the Taxpayers that "[t]he agenda is just a guideline," but the representative did not provide any other direction. Although the Taxpayers' complaints raise legitimate concerns, we are not convinced they amount to a deprivation of due process.

[¶18] The Taxpayers have not explained what additional information the witnesses would have proffered. The Taxpayers argue:

> [T]he proposed [testimony is] not cumulative of other evidence in the record. Arguments of counsel are not the same as testimonial evidence. Although Taxpayers resorted to making an offer of proof, such an offer is not itself evidence in the record; it is rather a record of what evidence was *excluded* from the record.

We disagree. In tax assessment proceedings, boards of county commissioners are not restricted by the same rules judicial tribunals must follow. *Am. Crystal Sugar Co.*, 2006 ND 118, ¶ 7, 714 N.W.2d 851. Taxing authorities may consider information that does not meet the standards for admissibility of evidence in court:

> While it exercises quasi-judicial powers, the Board is not circumscribed by the restrictions that apply to a court in the reception and consideration of evidence. The Board is not obliged to consider only evidence taken before it in the ordinary way. It may base its action in part upon investigations of its members, and upon their knowledge of values as derived from experience and study.

*Koch Hydrocarbon Co. v. State Bd. of Equalization*, 454 N.W.2d 508, 513 (N.D. 1990) (internal quotation marks omitted) (quoting *N. Pac. Ry. Co. v. State*, 71 N.D. 93, 104, 299 N.W. 696, 702 (1941)).

[¶19] Contrary to the Taxpayers' suggestion, the Board was not foreclosed from considering the Taxpayers' information presented in written form and

8

orally summarized by counsel. Although we acknowledge live-witness testimony is often more persuasive than written information, the fundamental standard for due process is an opportunity to be heard at a meaningful time and in a meaningful manner. The Board held a special hearing and did not restrict the Taxpayers' time to present their case or their manner of doing so. However evidence comes before the Board, once the matter is appealed to the district court or to this Court, both the Board and the Taxpayers are limited to the record developed before the Board. *Midwest Processing Co. v. McHenry Cty.*, 467 N.W.2d 895, 900 (N.D. 1991) (citing *Evenson v. Hlebechuk*, 305 N.W.2d 13, 16 (N.D. 1981) (the purpose of an appeal is for review; it is not an opportunity to develop different strategies and theories)). *See also Nat'l Sun Indus., Inc. v. Ransom Cty.*, 474 N.W.2d 502, 506 (N.D. 1991) (taxing authorities are also bound by the record they make for appeal). Despite the county representatives' terse responses to the Taxpayers' questions, we cannot say the Board acted "contrary to the statutes and rules" or treated the Taxpayers "with arbitrary and unreasonable discrimination." *See Am. Crystal Sugar Co.*, 2006 ND 118, ¶ 8, 714 N.W.2d 851. We conclude the Board did not deny the Taxpayers due process.

C

[¶20] The Taxpayers also argue that multipliers applied to arrive at the final assessment are arbitrary because there is no explanation of how the multipliers are calculated or what they quantify. The Taxpayers assert the multipliers "inflated" the Assessor's valuation "by more than 85% for no discernable reason." Because we reverse for the reasons stated in II(A), we need not address this argument here other than to reaffirm that the statutory requirement in tax abatement proceedings is to ascertain the true and full value, and the assessor and the board must apply that standard regardless of the method or tool they may use. An inability to explain how multipliers are determined and how they aid in reaching the true and full value would be relevant to determining whether a taxing authority acted in an arbitrary, capricious, or unreasonable manner.

# III

[¶21] We conclude the Board acted arbitrarily and unreasonably in adopting assessments exceeding the true and full value of the property. We reverse the district court judgments and the Board's decisions denying the Taxpayers' abatement applications. We remand for a new hearing to determine the "true and full value" of the properties and reconsideration of the abatement applications.

[¶22]   Jerod E. Tufte
Gerald W. VandeWalle
Lisa Fair McEvers
Daniel J. Crothers
Jon J. Jensen, C.J.